## 76700. REAHARD v. IVESTER et al.
(371 SE2d 905)

McMurray, Presiding Judge.

This appeal arises from the grant of summary judgment to appellees in their suit to recover rentals alleged to be due under a lease contract. Appellant Ralph M. Reahard entered into an agreement with Mr. and Mrs. Douglas Ivester to lease an apartment for a period of 21 months, beginning on August 20, 1985. Rent was to be payable monthly in advance at a rate of $1,600 a month for five months through December 20, 1985; $1,700 a month for five months through May 20, 1986; $1,800 a month for five months through October 20, 1986; and $1,900 a month for the last six months through April 20, 1987.

A deposit of $1,500 was also required in Paragraph 5 of the lease "as security for resident's fulfillment of the conditions of this agreement." The deposit was to be returned within 30 days after the premises was vacated if the lease term had expired or been terminated by both parties, all money due the lessors had been paid, and the premises was not damaged.

Paragraph 7 of the lease allowed early termination "[p]rovided resident is not in default hereunder at the time of giving notice, strictly complies with all the provisions of this paragraph, and termination is as of the last day of a calendar month . . . by (a) Giving management thirty (30) days written notice; plus (b) Paying all monies due through date of termination; plus (c) Paying an amount equal to one month's rent or one-fourth of the balance due under the rental agreement, whichever is the lesser amount, as liquidated damages; plus (d) Paying a prorated portion of the amount of $1,500.00 as expenses for repainting and cleaning based on the ratio of the number of months remaining in the initial term to the number of months originally in the initial term."

On May 19, 1986, appellant wrote appellee Douglas Ivester advising that he planned to vacate the premises "no later than July 1st." Appellee Ivester responded by a letter dated May 28, 1986, stating that appellant would "be required to abide by the terms of our agreement [under which] (a) The termination must be the last day of a calendar month; that will place the earliest termination date on June 30, 1986. Therefore, the rent for the last ten days of June will be 10/30 x $1800 [=] $600. . . . (b) You are required to pay one month's rent as liquidity damages at $1,800.00, the current rate . . . . (c) You are required to pay a further fee calculated as follows:

Number of months remaining (11)
Original term (21)
(.5238) x $1500.00 or $785.71

[for a total of] $3,185.71 . . ."

Appellant mailed appellee Douglas Ivester a check for $600 dated June 6, 1986, accompanied by a note explaining that this represented the "first part of payments" and that he would "send more later this month." Appellee Douglas Ivester's reply letter thanked him for the partial payment and reminded appellant that the balance due was $2,585.71, which must be received by June 25 to effect the termination and to avoid any late charges. Appellant made no further payments, but on June 30, 1986, he wrote to inform the appellees he had moved out of the rental property, stating that before he could make a final payment on any amounts due he needed written verification that the property had been inspected and "the full amount of the $1,500 deposit will be returned on or before August 1, 1986."

Appellee Douglas Ivester immediately responded, enclosing a copy of the lease and pointing out that the rental agreement was specific as to actions to be taken to terminate the lease. He reiterated exactly what steps appellant must take under the agreement and emphasized that because he had not yet complied, the lease continued in effect so that the amount then owed was $4,404.28 (consisting of two months rent at $1,800, late fee for July payment owed, and pro rata share of $1,500 deposit). After receiving a reply to this letter from appellant's attorney asserting that the amount due under the terms of the lease was $2,514.28, less the security deposit of $1,500, for a total of $1,014.24, appellee Ivester turned the matter over to his own lawyers, who reaffirmed his willingness to terminate the lease if the payments required by Paragraph 7 of the agreement were timely made.

On August 1, 1986, appellant tendered a check for $1,085.71 and offered to allow appellees to retain the $1,500 security deposit in exchange for terminating the lease. Appellees rejected this offer as being $600 less than due under Paragraph 7, returned the check to appellant and continued to send monthly notices regarding the additional rent and late fees as they accrued. Appellant never tendered an amount accepted by appellees and on January 15, 1987, a new tenant leased the premises at a monthly rental of $1,700, or $200 a month less than what appellant would have then been obligated to pay.

Appellees filed the instant suit on February 6, 1987, and moved for summary judgment. Appellant answered and filed a counterclaim seeking damages and expenses of litigation for the appellees' fraud and deceit, which appellees moved to dismiss. After considering the pleadings, arguments, evidence and theories of recovery of both parties, the trial court granted the appellees' motion for summary judgment. Considering the motion to dismiss appellant's counterclaim as a motion for summary judgment since matters outside the pleadings were submitted and considered, the court also entered judgment against appellant on his counterclaim. *Held*:

1. Appellant Reahard contends that summary judgment was improper because he was entitled to have a jury determine "the effect" of the terms set out in appellee Douglas Ivester's letters to terminate the lease. On the contrary, however, these letters merely restated the clear and unambiguous terms of the lease agreement and correctly computed the amounts due thereunder. As with other contracts, the construction of the provisions of a lease is generally one for the court to determine as a matter of law. OCGA § 13-2-1; *Peachtree on Peachtree Investors v. Reed Drug Co.*, 251 Ga. 692, 694 (1) (308 SE2d 825) (1983). "Where the language of a [lease] is clear, unambiguous, and capable of only one reasonable interpretation, no construction is necessary or even permissible. [Cit.]" *Stern's Gallery of Gifts v. Corp. Property Investors*, 176 Ga. App. 586, 593 (4) (337 SE2d 29) (1985). "A surrender of premises by a lessee has no legal effect until accepted by the lessor. [Cits.]" *Kimber v. Towne Hills Dev. Co.*, 156 Ga. App. 401, 402 (1) (274 SE2d 620) (1980). Since it is apparent under the undisputed facts that appellant did not tender an amount necessary to effect a termination under Paragraph 7 of the lease, and his abandonment of the premises did not relieve his obligation to pay rent, this issue could properly be determined by summary judgment. See *Stern's Gallery of Gifts*, supra, at 594 (4).

2. It follows that appellees were entitled as a matter of law to recover interest on their damages calculated pursuant to the terms of the lease from the date of filing the complaint through the date of judgment under OCGA § 13-6-13. See *Braner v. Southern &c. Ins. Co.*, 255 Ga. 117, 119 (1) (335 SE2d 547) (1985); *International Indem. Co. v. Terrell*, 178 Ga. App. 570 (2) (344 SE2d 239) (1986).

3. Appellant contends that the trial court erred in granting the security deposit to the appellees without an accounting and a proper finding because there are substantial issues of fact regarding the actions of the parties. This argument is without merit. Appellant never sought an accounting, and Paragraph 5 of the lease does not require refunding the security deposit until after all sums owing under the lease have been paid in full, which has not yet been done. "The lessor merely enforced the terms of the lease, as agreed to by the lessee." *Hardin v. Macon Mall*, 169 Ga. App. 793, 794 (1) (315 SE2d 4) (1984).

4. Appellant's assertion that the trial court "apparently dismissed the counterclaim without comment," thereby leaving genuine issues of material fact to be decided by a jury, is patently without basis. The trial court expressly ruled and entered judgment on this issue pursuant to OCGA § 9-11-56 (b), having considered matters outside the pleadings presented to it. Moreover, appellant has made no showing of what false representations or fraudulent acts were purportedly made, nor who perpetrated them or how he was harmed or suffered any damage in relying on them. There was absolutely no evi-

dence to support his argument that "after accepting the termination, [the Ivesters] led Mr. Reahard to believe that an agreement had been reached, then kept changing the terms."

Since he failed to set forth any facts sufficient to support a claim for fraud, the trial court did not err in granting summary judgment against appellant on his counterclaim. *Howard v. American Business Equip.*, 184 Ga. App. 550, 551 (2) (362 SE2d 127) (1987). "[A] party may not withstand a motion for summary judgment merely by frantically waving a flag of fraud. . . . Moreover, it was not error to grant summary judgment in the main action even though the [appellant] had a pending counterclaim. [Cit.]" *Finnegan v. Davidson Co.*, 184 Ga. App. 537, 538 (362 SE2d 117) (1987). We find no grounds for reversal.

5. Appellees' motion for an assessment of damages for a frivolous appeal pursuant to OCGA § 5-6-6 is denied.

*Judgment affirmed. Pope and Benham, JJ., concur.*

DECIDED JULY 11, 1988 —
REHEARING DENIED JULY 25, 1988 ▮▮▮▮▮▮▮▮

*Paul H. Wyatt*, for appellant.
*H. Quigg Fletcher III*, for appellees.