**In re Q–MASTERS, INC., Debtor.**

**Bankruptcy No. 90–29414–BKC–SMW.**

United States Bankruptcy Court,
S.D. Florida.

Dec. 17, 1991.

158

Raymond Ray, Fort Lauderdale, Fla. for debtor.

Karen S. Jennemann, Jacksonville, Fla. for Pineta Co., Oakland Park Associates, Kraft Food Services, Louis Gaynor, Southern Foods, Michael Bereha.

Chad S. Pugatch, Fort Lauderdale, Fla. for Creditors Committee.

Steven Turner, Asst. U.S. Trustee.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SIDNEY M. WEAVER, Chief Judge.

THIS CAUSE came before the Court on October 2, 1991, upon the debtor's Objection To The Claim of Pineta Company, and the Court having listened to the argument of counsel, having reviewed the evidence presented, as well as the post-hearing memoranda of law submitted by the parties, hereby makes the following findings of fact and conclusions of law:

The Court has jurisdiction over this matter as a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B).

On June 8, 1982, Q–Masters, Inc. (the "debtor") and the Pineta Company ("Pineta") executed a lease for the debtor's rental of real property located in Palm Beach County, Florida. The term of the lease expires on May 31, 2002 and obligates the debtor to pay monthly rent in the amount of $8,004.93 plus applicable taxes. The lease also obligates the debtor to pay all applicable real estate taxes, to pay for all utility bills on the property, to maintain insurance on the property and to maintain the property in a good state of repair.

On November 12, 1983, the debtor assigned its interest in the lease to Sun–Q Corporation. The assignment states that the debtor is not relieved of any contractual obligations under the lease by virtue of the assignment. Sun–Q Corporation further assigned its interest in the lease to Hogtown, Inc. ("Hogtown") on December 15, 1986. This assignment also provides that Sun–Q Corporation remains liable to Pineta should Hogtown default in its lease obligations.

Hogtown paid rent to Pineta until September 18, 1988. Thereafter, Pineta did not receive any rent under the lease and, in October of 1988, it was informed by an adjoining landowner that the premises subject to the lease had been abandoned by Hogtown. Pineta and the debtor then corresponded on various occasions regarding Hogtown's default under the lease. The correspondence to Pineta from the then-president of the debtor evidence that the debtor acknowledged the abandonment by Hogtown and recognized the debtor's continuing obligation to pay rent to Pineta. The parties then agreed upon an acceptable sales price for the property and initiated efforts to market the property for sale, including the debtor's hiring of a real estate broker. Eventually, the efforts to obtain a new tenant or a purchaser for the property failed and, in December of 1989, the debtor acknowledged surrender and Pineta retook possession of the property.

On December 12, 1990, the debtor filed its voluntary petition under Chapter 11 in this Court. Pineta filed its claim (no. 14) in the amount of $678,495.63 representing the damages it sustained as a result of the debtor's surrender of the premises and breach of the lease agreement. The debtor objected to the claim and, at the hearing on the debtor's objection, Pineta reduced the claim to $659,050.72. Pineta asserts that the claim is allowable in that § 502(b)(6) permits the landlord to recover the damages it sustained through the date it repossessed the premises, plus the future rent reserved under the lease. Therefore, Pine-

ta contends that it may seek the recovery of the following items from the estate:

Rent through date of possession/surrender (10/88–12/31/89)

| | |
|---|---|
| 15 months × $8,004.93 | 120,073.95 |
| Interest | 14,408.40 |
| 1988 Taxes | 11,184.00 |
| 1989 Taxes | 11,726.83 |
| Insurance | 1,055.75 |
| Water Bill | 2,206.71 |
| Auditors' Fees | 1,825.00 |
| Mediators' Fees | 541.66 |
| Sasso Lien | 1,000.00 |
| Attorneys' Fees | 4,438.55 |
| Attorneys' Fees | 13,000.00 |
| Unpaid Rent | $181,460.85 |
| 15% of rent reserved for remainder of lease term | $201,589.87 |
| | $383,050.72 |
| Property Damage | $276,000.00 |
| | $659,050.72 |

The debtor contends that § 502(b)(6) authorizes Pineta to seek recovery only with respect to its state law damage claim and that not all the items that are asserted by Pineta to be elements of its damage claim are recoverable in this instance.

■ The Court must initially focus its inquiry within the framework of § 502(b)(6) which provides, in pertinent part, as follows:

(b) ... if such an objection is made, the court, after notice and hearing, shall determine the amount of such claim ..., and shall allow such claim in such amount except that—

(6) if such claim is the claim of a lessor for damages resulting from the termination of a lease of real property, such claim exceeds—

(A) the rent reserved by such lease, without acceleration, for the greater of one year, or 15 percent, not to exceed three years, of the remaining term of such lease, following the earlier of—

(i) the date of the filing of the petition; and (ii) the date on which such lessor repossessed, or the lessee surrendered, the leased property; plus

(B) any unpaid rent due under such lease without acceleration, on the earlier of such dates;

11 U.S.C. § 502(b)(6).

The purpose of § 502(b)(6) is to compensate the landlord for its loss while not permit-

ting a claim so large as to prevent other unsecured creditors from recovering a dividend from the estate. In determining the allowance of a claim under § 502(b)(6), the Court is called upon to first calculate what actual damages are recoverable by the landlord under state law as a result of the debtor's breach of the lease. The Court must then determine if this amount exceeds the statutory ceiling imposed by § 502(b)(6) and if so, the Court must limit the claim to the amount authorized under § 502(b)(6). *In re First Alliance Corp.*, 126 B.R. 589 (Bankr.S.D.Cal.1991).

### Pineta's Section 502(b)(6)(A) Claim For Future Rent Reserved Under The Lease

■ The rights of the parties under a lease of real estate are to be determined by state law. *In the Matter of Zienel Furniture, Inc.*, 13 B.R. 264 (Bankr.E.D.Wis. 1981). Under Florida law, upon the breach of a lease by the lessee, the lessor has a choice of three alternative remedies. The lessor may treat the lease as terminated and may retake possession of the premises for his own account; the lessor may retake the premises for the account of the lessee; or, the lessor may do nothing, declare the lease accelerated, and hold the lessee liable for all past due rent as well as all future rent under the lease. *Coast Federal Savings and Loan Asso. v. De Loach*, 362 So.2d 982, 984 (Fla. 2nd DCA 1978). A lessor has no duty, under Florida law, to mitigate damages following the lessee's breach of the lease. *Id.* Because Pineta accelerated the lease, under state law it would have the right to a claim in excess of $1,300,000.00 for the past due rent as well as for the future rent reserved under the lease. Hence, the § 502(b)(6) limitation on the allowable recovery for a landlord's claim based on a debtor's breach of a lease is applicable in this case.

Because the bankruptcy petition was filed subsequent to the date of surrender or repossession of the premises, the Court must decide when the debtor surrendered the premises or when Pineta retook posses-

sion of the premises. The debtor asserts that, as a matter of Florida law, it surrendered possession on December 15, 1986 when Sun–Q Corporation assigned its interest in the lease to Hogtown. The debtor, relying on the case of *Joseph Alfassa's Sons, Inc. v. Wally*, 264 So.2d 122, 123 (Fla. 3rd DCA 1972), contends that an assignment of a lease constitutes a surrender of the leasehold. Alternatively, the debtor asserts that it surrendered possession of the premises in October of 1988, when it acknowledged to Pineta that Hogtown, as assignee of the lease, had abandoned and vacated the premises.

Pineta argues that the debtor did not surrender and, therefore, Pineta did not repossess the premises, until December of 1989. Pineta contends that, until that time, the debtor had not consented to having Pineta retake possession of the premises. Pineta relies on the various letters admitted into evidence which indicate that the debtor had acknowledged to Pineta that it would be responsible for any damages sustained by Pineta as a result of Hogtown's abandonment and default under the lease. According to Pineta, it was not until the time that the debtor consented to the repossession by Pineta in December of 1989, that the debtor relinquished dominion and control of the premises consistent with its interest as lessee.

The Court finds that the debtor did not surrender possession in December of 1986 when it assigned its interest in the lease to Hogtown. The debtor's reliance on the case of *Joseph Alfassa's Sons, Inc. v. Wally*, 264 So.2d 122, is misplaced in that the case does not support the debtor's proposition that an assignment of a lease constitutes a surrender of the premises by the lessee as of the time of the assignment. Further, the assignment to Hogtown preserved the debtor's obligation under the lease to Pineta and did not absolve the debtor from liability in the event of a default by Hogtown.

The Court also finds that the debtor did not surrender the premises in October of 1988 when Pineta became aware that Hogtown had abandoned the premises.

Following the abandonment by Hogtown, the debtor acknowledged to Pineta that it would remain liable for the monthly rent that was required to be paid under the lease. Subsequently, the debtor contracted a real estate broker in an effort to obtain a new tenant or a buyer who would purchase the property at a price acceptable to Pineta. It was not until these efforts proved fruitless that the debtor expressly consented to the repossession of the premises by Pineta. Based on the totality of the circumstances, the Court finds that Pineta repossessed the premises in December of 1989.

Having established that Pineta repossessed the premises in December of 1989, the Court concludes that Pineta is entitled to a claim in the amount of $201,589.87 pursuant to § 502(b)(6)(A) for the future rent reserved under the lease which is calculated as follows:

Term: 12/31/89–5/31/2002=150 Months

Rent/month = $8,004.93 + 954.62 (taxes) = $8,959.55

150 × $8,959.55 = $1,343,932.50

$1,343,932.50 × .15 = $201,589.87

### Pineta's Section 506(b)(6)(B) Claim For The Damages Sustained Through The Date of Repossession

Pineta also asserts a claim for the rents due from October of 1988, the month that Hogtown abandoned, through December of 1989, the date it repossessed the premises, plus additional taxes, insurance, utility bills and other obligations imposed upon the debtor by the terms of the lease in the sum of $181,460.85. Additionally, Pineta asserts, as an element of the claim, $276,000.00 in property damage to the premises resulting from the removal of equipment and vandalism. The debtor objects to Pineta's calculation of its damage claim asserting that Pineta has miscalculated the interest due on the unpaid rent, and that Pineta has also failed to credit the debtor for the rent paid by Hogtown subsequent to the assignment. The debtor also contends that Pineta is seeking the recovery of damages that are not ordinarily allowable under § 502(b)(6).

 A lessor's right to payments from a debtor are governed by the provisions of the lease or other contract between the lessor and the debtor. *In re Goldblatt Brothers, Inc.*, 66 B.R. 337, 345 (Bankr. N.D.Ill.E.D.1986). Under the terms of the lease, the debtor remained liable for the payment of rent plus applicable taxes; for the payment of all utilities; for the payment of real estate taxes; for maintaining insurance on the property; and for maintaining the premises in a good state of repair. Additionally, the debtor covenanted to indemnify and hold Pineta harmless from any and all damages that Pineta may incur with respect to the debtor's leasing of the premises. The lease authorized Pineta to declare the lease accelerated and declare the balance of the rent reserved, as well as all the rent in arrears, as immediately due and payable. Therefore, the lease agreement entitles Pineta to a claim for all damages, losses and expenses sustained as a result of the debtor's breach of the lease agreement.

 Pineta's claim for property damage to the premises is asserted to be $276,000.00. In support of this portion of the claim, Pineta introduced into evidence various pictures illustrating the condition of the premises in February of 1990. Pineta also introduced the testimony of a real estate broker who testified as to the value of the premises in its present condition. The broker testified that it would cost between $197,300.00 and $225,000.00 to restore the premises to its prior condition and that the property is currently valued at $542,200.00, but the property would have a current value of $700,000.00 if fully restored. On cross examination, however, counsel for the debtor established that the broker is not a licensed contractor nor is he a licensed appraiser thereby raising a question as to the credibility of the opinion testimony.

Having reviewed the documentary evidence as well as the testimony of the witnesses, the Court concludes that Pineta is entitled to assert a portion of the claim for property damage. With respect to the extent of the damage claim, the Court finds that the testimony of the real estate broker does not provide the Court with an adequate measure of the property damage claim. While the Court accepts that the real estate broker may be qualified to offer an opinion as to the value of the premises, the Court is also mindful that any valuation of the property in question, although determined in part by the condition of the premises, is also influenced by the current condition of the South Florida real estate market. The pictures of the premises illustrate the deteriorating condition of the premises. However, the Court is not persuaded by the opinion testimony as to the cost that would be incurred in restoring the premises, particularly when the testimony as to the restoration cost is offered by someone other than a licensed contractor. Based on the evidence before it, the Court finds that Pineta is entitled to a property damage claim in the amount of $90,000.00. The Court also concludes that Pineta is entitled to a $266,655.64 claim pursuant to § 502(b)(6)(B) representing the following damages it sustained as a result of the breach of the lease:

Rent through date of possession/surrender (10/88–12/31/89)

| | |
|---|---|
| 15 months × $8,004.93 | 120,073.95 |
| Interest | 14,408.40 |
| 1988 Taxes | 11,184.00 |
| 1989 Taxes | 11,726.83 |
| Insurance | 1,055.75 |
| Water Bill | 2,206.71 |
| Sasso Lien | 1,000.00 |
| Attorneys' Fees | 15,000.00 |
| Unpaid Rent | $176,655.64 |
| Property Damage | $ 90,000.00 |
| | $266,655.64 |

In conclusion, the Court finds that Pineta has an allowed claim for $201,589.87 pursuant to 11 U.S.C. § 502(b)(6)(A) representing the future rent reserved under the lease, and an allowed claim for $266,655.64 representing damages for unpaid rent under the lease pursuant to 11 U.S.C. § 502(b)(6)(B), for a total allowed claim under 11 U.S.C. § 502(b)(6) of $468,245.51.

The Court shall enter a separate order in conformity with the Findings of Fact and Conclusions of Law herein.