**In re William R. SMITH, Debtor.**

**William R. Smith, Debtor,**

**v.**

**Sprayberry Square Holdings, Inc. Creditor.**

**No. 99–11124.**

United States Bankruptcy Court, S.D. Georgia, Augusta Division.

June 2, 2000.

Mr. Todd Boudreaux, Attorney at Law, Augusta, GA, for Debtor.

Mr. Stephen V. Kern, Attorney at Law, Atlanta, GA, for Creditor.

## ORDER

JOHN S. DALIS, Chief Judge.

William R. Smith ("Debtor") objects to certain charges within the claim filed by Sprayberry Square Holdings, Inc. ("Landlord"). The claim is based on Debtor's pre-petition breach of a lease for commercial real estate in a shopping center. Parties agree that the claim is governed by 11 U.S.C. § 502(b)(6). The objection is sustained in part, reducing the amount of the allowed claim to $95,798.39.

The facts of this case are as follows. Landlord and Debtor executed a commercial shopping center lease agreement ("Lease") on August 8, 1994, for a term ending December 31, 1999.[1] The Lease required Debtor to make monthly payment of "Fixed Minimum Rent" and "Additional Rent." Additional Rent included "Operating Costs" and "Taxes." Fixed Minimum Rent was fully abated for the first four months of the Lease and partially abated for the next four months, contingent on Debtor's avoiding default (these amounts were delineated "Excused Rent"). At the outset of the Lease term, Landlord paid Debtor a "Building Allowance" of $38,250.00 for construction work to make the

---

1. As typed in the Lease, Debtor signed as a representative of Ladies Workout Express, Inc. However, the corporation's typewritten name was changed by handwriting and both parties initialed the changes. Landlord claims that Debtor made the change knowing that no corporation by the "corrected" name existed. Debtor conceded at the hearing that he was liable to Landlord on the Lease, although he contests the amount of Landlord's claim. All payments made by or debt accrued by either Debtor or Ladies Workout Express, Inc. will be attributed to Debtor in this Order.

premises suitable for Debtor's business. In the event of default by the Debtor, the Lease provided for late charges or interest to be assessed, and if legal action became necessary, for Debtor to be liable for Landlord's attorney fees.

Payments due under the Lease remained current until approximately January, 1998. Debtor had a balance due for that month, and no payment was made on February 1, 1998 or thereafter. Landlord contends that Debtor was provided notice of default and demand for payment by correspondence dated March 10, 1998. In a letter dated May 6, 1998, and sent by certified mail (Sprayberry Exhibit 6), Landlord's attorney wrote,

> We have been advised that you have closed for business and have vacated the Premises as of Saturday, May 2, 1998. Please understand that the Landlord does not accept your abandonment of the Premises. The Lease remains in full force and effect and the Landlord demands that you immediately reopen for business as is required by your Lease.

Exactly when Debtor abandoned the premises was undetermined at the hearing. The parties do not dispute that abandonment occurred before May 2, 1998.

Landlord filed a complaint in the state court system against Debtor on May 5, 1998. Landlord alleged that, in addition to defaulting on payments due under the Lease, Debtor had violated the Lease by setting up a similar business with a similar name at another shopping center less than five miles away. Trial was scheduled for May, 1999.

On May 7, 1999, the day before the trial was to take place, Debtor filed this chapter 13 case, which stayed the state court action. On that same day, Landlord notified Debtor in writing through his attorney that the Lease was terminated. Landlord subsequently filed a proof of claim in Debtor's bankruptcy case to which Debtor objected, resulting in this contested matter.

Meanwhile, Landlord contacted several other businesses, seeking to replace Debt-or with another tenant. These efforts were unsuccessful for several months. Another tenant was eventually found, although at a lower rent. Landlord received payments from the replacement tenant beginning September, 1999, and has deducted these amounts from its claim against Debtor.

At hearing on the claim objection, Debtor contended that Landlord had failed to mitigate damages; that the premises had been surrendered prior to the date stated in the claim; and that specific charges in Landlord's claim should not be allowed. After presentation of evidence, I made a finding that Landlord had made reasonable efforts to re-let the premises. Debtor's remaining objections to Landlord's claim were taken under advisement.

At the end of the hearing, I asked both counsel if there was any additional evidence. There was not. Although the parties were permitted to submit and respond to briefs post-hearing, the record was not left open for additional evidence to be presented. The affidavit of Landlord's attorney and attached exhibits subsequently filed with this Court are not considered.

The objection to claim filed by Debtor on October 4, 1999, included only general statements: that Landlord had filed a claim; and that, "The Debtor denies that he is indebted to the Creditor in the amount claimed, and requests a hearing to determine the amount, if any, owed." At hearing, Debtor objected to the following specific charges in Landlord's claim: attorneys fees; late charges; interest; post-petition rent; unamortized building allowance; and excused rent. In post-hearing briefs, Debtor raised new grounds for objection, i.e. Landlord's charges for common area maintenance ("CAM") and taxes.

 A proof of claim is prima facie evidence of the claim's validity and amount. Fed.R.Bankr.P. 3001(f). Such claim is deemed allowed unless a party in interest objects. 11 U.S.C. § 502(a). The party objecting to the claim bears the initial burden of presenting sufficient evi-

dence to overcome the presumed validity and amount of the claim. *In re Pacific Arts Publishing, Inc.,* 198 B.R. 319, 321 (Bankr.C.D.Cal.1996) (citations omitted); *In re Challa,* 186 B.R. 750, 754 (Bankr. M.D.Fla.1995); *In re Clements,* 185 B.R. 895, 898–99 (Bankr.M.D.Fla.1995). Although that burden is easily satisfied, affirmative proof must be offered to overcome the presumed validity of the claim. *Id.* If the objecting party overcomes the prima facie validity of the claim, then the burden shifts to the claimant to prove its claim by a preponderance of the evidence. *Id.*

▆ In objecting to the claim, Debtor bore the burden of going forward with sufficient evidence to place the claim at issue. *Id.* This burden includes placing the creditor on notice as to what aspects of the claim a debtor finds objectionable. By failing to raise objections to CAM or taxes either in pre-hearing documents or at the hearing, Debtor failed to place those charges in issue. Late raised objections to CAM and taxes are not considered here.

Landlord claims damages of $152,059.85.[2] The charges are divided pre- and post-petition as follows:

Pre–Petition [3]

| | | |
|---|---|---|
| Total Rent, Common Area Maintenance and Taxes | $ 71,999.45 | |
| Excused Rent | 19,125.00 | |
| Unamortized Allowance | 14,662.50 | |
| Late Charges of $10.00/day | 4,600.00 | |
| Total through 5/6/99 | $110,386.95 | |
| Interest | 6,191.15 | |
| Attorney's Fees | 11,682.81 | |
| Total Pre–Petition | | $128,260.91 |

Post–Petition

| | | |
|---|---|---|
| Rent, Common Area Maintenance and Taxes | $ 30,993.41 | |
| Credit for Rent from New Tenant | – 7,194.47 | |
| Total Post–Petition | | $ 23,798.94 |
| Total Claim | | $152,059.85 |

**2.** Landlord has filed a proof of claim and amended it once. In this Order, all references are to the amended claim.

**3.** Landlord's pre-petition claim shows Excused Rent levied against Debtor on 2/1/98 in the amount of $19,125.00, and Unamortized Allowance levied on the same date in the amount of $14,662.50. Calculations of both

Debtor's objections to the claim are based on 11 U.S.C. § 502(b)(6). Debtor contends that § 502(b)(6) disallows charges accrued more than one year after Debtor vacated the premises. Debtor further contends that under § 502(b)(6) all charges except fixed minimum rent must be disallowed. The two issues to be resolved are whether the § 502(b)(6) calculation turns on the date the premises were abandoned or on the date the bankruptcy petition was filed, and whether that subsection allows the itemized charges of Landlord's claim. The Court has jurisdiction to hear this matter as a core bankruptcy proceeding under 28 U.S.C. § 157(b)(2)(A), (B) and (O) and 28 U.S.C. § 1334 (1994).

Allowance of Landlord's claim is governed by § 502(b)(6).

§ 502. Allowance of claims or interests [in pertinent part]

(b) Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—

(6) if such claim is the claim of a lessor for damages resulting from the termination of a lease of real property, such claim exceeds—

(A) the rent reserved by such lease, without acceleration, for the greater of one year, or 15 percent, not to exceed three years, of the remaining term of such lease, following the earlier of—

amounts are provided in footnotes, showing that these figures are in accordance with the terms of the Lease. On the next page of the claim, the "pre-petition claim summary," these dollar figures are transposed. Excused Rent and Unamortized Allowance are considered in the respective amounts of $19,125.00 and $14,662.50.

(i) the date of the filing of the petition; and

(ii) the date on which such lessor repossessed, or the lessee surrendered, the leased property; plus

(B) any unpaid rent due under such lease, without acceleration, on the earlier of such dates;

11 U.S.C. § 502(b)(6).

■ "Section 502(b)(6) is designed to compensate a landlord for the loss suffered upon termination of a lease, while not permitting large claims for breaches of long-term leases, which would prevent other general unsecured creditors from recovering from the estate." *Kuske v. McSheridan (In re McSheridan)*, 184 B.R. 91, 97 (9th Cir. BAP 1995) (*citing In re Atlantic Container Corp.*, 133 B.R. 980, 985 (Bankr. N.D.Ill.1991)); *accord Vause v. Capital Poly Bag, Inc. (In re Vause)*, 886 F.2d 794, 801–02 (6th Cir.1989); 4 Lawrence P. King, ed., *Collier on Bankruptcy* ¶ 502.03[7][a] (15th ed. rev.) (*citing* H.R.Rep. No. 595, 95th Cong., 1st Sess. 353 (1977), U.S.Code Cong. & Admin.News, pp. 5963, 6308). "Although Congress sought to limit the amount of damages that a landlord could recover from a bankrupt debtor, Congress only placed said limitations on a landlord's claims for post-petition damages, 11 U.S.C. § 502(b)(6)(A), while ensuring that said landlord recovers on those damages incurred up to the earlier of lease termination or the petition filing. 11 U.S.C. § 502(b)(6)(B)." *Fifth Avenue Jewelers, Inc. v. Great East Mall, Inc. (In re Fifth Avenue Jewelers, Inc.)*, 203 B.R. 372, 379 (Bankr.W.D.Pa.1996).

■ A landlord's claim for damages is determined by state law and the terms of the lease, and then limited by § 502(b)(6). *McSheridan*, 184 B.R. at 96; *In re Gantos,*

*Inc.*, 176 B.R. 793, 795 (Bankr.W.D.Mich. 1995); *In re Iron–Oak Supply Corp.*, 169 B.R. 414 (Bankr.E.D.Cal.1994); *In re Financial News Network, Inc.*, 149 B.R. 348, 350–51 (Bankr.S.D.N.Y.1993); *In re Q-Masters, Inc.*, 135 B.R. 157, 159 (Bankr. S.D.Fla.1991). *See also Fifth Avenue Jewelers*, 203 B.R. at 382; *In re Fulton*, 148 B.R. 838, 843 (Bankr.S.D.Tex.1992); *In re Thompson*, 116 B.R. 610, 612 (Bankr. S.D.Ohio 1990) (in these three cases, state court judgment claims were limited by § 502(b)(6) cap). Section 18.13 of the Lease, "Applicable Law," states, "The laws of the state in which the Shopping Center is located shall govern the validity, performance and enforcement of this Lease." The shopping center is located in the state of Georgia. O.C.G.A. § 11–1–105(1).[4] Therefore, Landlord may claim no more than is allowed by Georgia law and the terms of the Lease. However, those charges recoverable under Georgia law and the terms of the Lease are not allowed as a part of a bankruptcy claim to the extent that they exceed the § 502(b)(6) cap.

Debtor does not dispute that Landlord's claimed amounts comply with state law. Debtor's objections are solely that Landlord's claimed amounts are disallowed under 11 U.S.C. § 502(b)(6). The items within Landlord's claim will be considered only in this regard. In determining the amount of the allowed claim, I must first determine the date from which Landlord's claim may be calculated.

Section 502(b)(6) requires a determination of which date is earlier: the date Debtor petitioned for bankruptcy, or the date Landlord repossessed or Debtor surrendered the premises. Debtor claims that the premises were surrendered when vacated sometime before May 2, 1998.

4. O.C.G.A. § 11–1–105. Territorial application of the title; parties' power to choose applicable law.

(1) Except as provided hereafter in this Code section, when a transaction bears a reasonable relation to this state and also to another state or nation the parties may agree that the law either of this state or of such other state or nation shall govern their rights and duties. Failing such agreement this title applies to transactions bearing an appropriate relation to this state.

Landlord maintains that no surrender took place, but that repossession and petition for bankruptcy both occurred on May 7, 1999.

 The term "surrender" is not defined in the Bankruptcy Code. State law determines whether real estate was surrendered to a lessor for the purposes of § 502(b)(6). *In re Blatstein,* 226 B.R. 140, 160–61 (E.D.Pa.1998), *affirming In re Main, Inc.,* 1997 WL 626544 *6–9 (Bankr. E.D.Pal.), *on remand from In re Blatstein* 1997 WL 560119, *10–11 (E.D.Pa.1997) (district court overruled bankruptcy court's use of "common sense" meaning of "surrender" in favor of state law definition); *In re Potomac Sys. Eng'g Inc.,* 208 B.R. 561, 563 (Bankr.N.D.Ala.1997); *Fifth Ave. Jewelers,* 203 B.R. at 378 (citations omitted); *Iron–Oak Supply Corp.,* 169 B.R. at 415–18 (noting that "surrender" can be a term of art, has multiple meanings, and may have contradictory meanings within the Bankruptcy Code, e.g. 11 U.S.C. § 365(d)(4); and concluding that whether a leasehold was "surrendered" for purposes of § 502(b)(6) is governed by state law);[5] *In re Allegheny Int'l, Inc.,* 136 B.R. 396, 403–04 (Bankr.W.D.Pa.1991).

 In Georgia, a lessee's surrender of premises has no legal effect until expressly or impliedly accepted by the lessor. *Lawson v. Crawford,* 220 Ga.App. 447, 469 S.E.2d 507 (1996); *Biggs v. Long, Horne, Upchurch, Waters & Assoc., Inc.,* 212 Ga.App. 195, 198, 441 S.E.2d 677, 681 (1994); *Reahard v. Ivester,* 188 Ga.App. 17, 19, 371 S.E.2d 905, 907 (1988); *Kimber v. Towne Hills Dev. Co.,* 156 Ga.App. 401, 402, 274 S.E.2d 620, 622 (1980) (citations omitted); *Jenkins v. Smith,* 92 Ga.App. 296, 88 S.E.2d 533 (1955); *see also Black's Law Dictionary* 1295 (5th ed. 1979) ("Surrender differs from 'abandonment,' as applied to leased premises, inasmuch as the latter is simply an act on the part of the lessee alone; but to show a surrender, a mutual agreement between lessor and lessee that the lease is terminated must be clearly proved."). Here, Landlord neither expressly nor impliedly accepted Debtor's surrender of the premises.[6] Instead, Debtor was given written notice that surrender was not accepted and the lease remained in effect. (Sprayberry Exhibit 6). Under Georgia law, the premises were never surrendered because there was no agreement between the parties. Therefore, Landlord's claim is properly calculated using the date of May 7, 1999, when Landlord terminated the lease and Debtor petitioned for bankruptcy.

Under § 502(b)(6)(A), then, Landlord may claim damages not to exceed the rent

---

**5.** As acknowledged in *Iron–Oak Supply Corp.,* 11 U.S.C. § 365(d)(4) employs a different meaning for the word "surrender" than does § 502(b)(6). 169 B.R. at 417.

... if the trustee does not assume or reject an unexpired lease of nonresidential real property ... then such lease is deemed rejected, and the trustee shall immediately surrender such nonresidential real property to the lessor.

11 U.S.C. § 365(d)(4). In the context of § 365(d)(4), the lessor has no power to reject surrender. *Id., Inland's Monthly Income Fund, L.P. v. Duckwall–ALCO Stores, Inc. (In re Duckwall–ALCO Stores, Inc.),* 150 B.R. 965, 971–72 (D.Kan.1993).

The *Duckwall–ALCO* Court explained that "surrender" is a legal term of art in landlord-tenant law, requiring agreement by both parties. 150 B.R. at 971. The state law doctrine of "surrender" is preempted by the Bankruptcy Code, to the extent that the two

are inconsistent. *Id.* The language of § 365(d)(4) envisions a unilateral decision whether to reject or assume the unexpired lease. *Id.* Because the § 365(d)(4) use of the word "surrender" conflicts with the state law meaning, the federal law meaning preempts. *Id.* This reasoning does not challenge the line of cases holding that "surrender" under § 502(b)(6) is defined by state law, because the state law meaning of "surrender" does not conflict with federal law within the context of § 502(b)(6). *Iron–Oak Supply Corp.,* 169 B.R. at 417–19.

**6.** Landlord's filing suit against Debtor in state court on May 5, 1998, did not terminate the Lease and did not constitute repossession or acceptance of Debtor's surrender of premises. *Johnson v. Ashkouti,* 193 Ga.App. 810, 389 S.E.2d 27 (1989); *Kimber v. Towne Hills Dev. Co.,* 156 Ga.App. 401, 274 S.E.2d 620 (1980).

reserved under the Lease from May 7, 1999 through the remaining term of the lease, December 31, 1999, without acceleration. This corresponds to the "Post–Petition" section of Landlord's claim, which included rent, common area maintenance (CAM) and taxes, less payments received from the new tenant. Under the next paragraph, § 502(b)(6)(B), Landlord may claim damages not to exceed the unpaid rent due under the Lease, without acceleration, on May 7, 1999. This corresponds to the "Pre–Petition" section of Landlord's claim, which includes rent, CAM, taxes, excused rent, unamortized building allowance, late charges, interest, and attorneys fees.

Debtor objects to all charges in Landlord's claim except those for fixed minimum rent on the grounds that § 502(b)(6) allows only rent and such charges are not rent. While Landlord agrees that § 502(b)(6)(A) post-petition charges must fit within the definition of rent, it argues that § 502(b)(6)(B) does not limit the pre-petition section of the claim to only rent, but includes all pre-petition amounts allowed under state law.

To support its statement that 502(b)(6)(B) allows all pre-petition amounts permitted by state law, regardless of whether the charges are rent, Landlord quotes *Collier on Bankruptcy*, "There is no limit on amounts owed under the lease as of the petition date." 4 ¶ 502.03[7][e]. However, this sentence is not as all-inclusive when considered in context.

[e] No Limit for *Rental Amounts* Owed as of Petition Date.

There is no limit on amounts owing under the lease as of the petition date. Hence, if a debtor lessee in delinquent on payments as of the petition date, that amount is allowed as an amount "due" under such lease under section 502(b)(6)(B) and is not subject to the limitation of the prior subsection.

Congress intended, through subparagraphs (A) and (B) of section 502(b)(6), to provide lessors with *actual damages*

*for past rent* and to place a limit on damages for speculative future rent payments in long-term leases . . .

*Collier on Bankruptcy,* ¶ 502.03[7][e] (emphasis added).

▮ Bankruptcy Courts are bound by the plain language of the Code. *Patterson v. Shumate,* 504 U.S. 753, 759, 112 S.Ct. 2242, 2247, 119 L.Ed.2d 519 (1992); *U.S. v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989); *In re American Steel Product, Inc.,* 197 F.3d 1354, 1356 (11th Cir.1999); *In re Andover Togs, Inc.,* 231 B.R. 521, 546 (Bankr.S.D.N.Y.1999); *In re PPI Enterprises (U.S.), Inc.,* 228 B.R. 339, 346 (Bankr.D.Del.1998). Here the Code has stated that claims by a lessor for pre-petition damages are disallowed if they exceed "unpaid rent." 11 U.S.C. § 502(b)(6)(B). Thus, claims under § 502(b)(6)(B) are allowed if they are actual damages for "unpaid rent." *In re Blatstein,* 1997 WL 560119, *16 (E.D.Pa.); *Fifth Avenue Jewelers,* 203 B.R. at 380–81; *Fulton,* 148 B.R. at 844.

▮ Some courts have allowed pre-petition damages beyond rent under § 502(b)(6)(B). *In re Clements,* 185 B.R. 895, 902–03 (Bankr.M.D.Fla.1995) (allowing legal expenses); *In re Q–Masters, Inc.,* 135 B.R. 157, 161 (Bankr.S.D.Fla. 1991) (allowing interest, attorneys' fees, and property damage). *Clements* cites the legislative history of § 502(b)(6), "[a landlord's] allowed claim is for his total damages, as limited by this paragraph." 185 B.R. at 902; H.R. 95–595 to accompany H.R. 8200, 95th Congr. 1st Sess. pp. 353–355 (1977), U.S.Code Cong. & Admin. News, pp. 6308–6311. Yet "total damages, as limited by this paragraph" does not imply "all damages." Moreover, a court must first examine the language of a statute before turning to its legislative history. A statute that is unambiguous must be enforced according to its terms unless the result is unreasonable. *Ron Pair Enterprises,* 489 U.S. at 242, 109 S.Ct. 1026;

*American Steel*, 197 F.3d at 1356; *Andover Togs*, 231 B.R. at 546. "Unpaid rent" clearly describes the type of claims allowed and reflects Congress's intent to limit the allowable claim. 11 U.S.C. § 502(b)(6)(B). However, " unpaid rent" may include lease obligations other than fixed minimum rent which share the characteristics of rent, depending on the type of lease. *In re McSheridan*, 184 B.R. 91, 97 (9th Cir. BAP 1995). A gross lease obliges the tenant only to pay rent, with the landlord responsible for paying taxes, insurance, and maintenance. In a net lease, the tenant pays, in addition to rent, expenses such as taxes, insurance, and maintenance, making the rent payment net to the landlord. Here, the parties signed a net lease. The Bankruptcy Appellate Panel of the Ninth Circuit has set out a test for whether payments required under a net lease are "rent reserved" for claims limited by § 502(b)(6)(A). *McSheridan*, 184 B.R. at 99. Although the B.A.P. did not actually apply its test, it did explain how the test is applied. The B.A.P. noted that "bankruptcy courts must make an independent determination of what constitutes 'rent reserved' because labels alone may be misleading." *Id.*

> We hold that the following three-part test must be met for a charge to constitute "rent reserved" under § 502(b)(6)(A):
>
> 1) The charge must: (a) be designated as "rent" or "additional rent" in the lease; or (b) be provided as the tenant's/lessee's obligation in the lease;
>
> 2) The charge must be related to the value of the property or the lease thereon; and
>
> 3) the charge must be properly classifiable as rent because it is a fixed, regular or periodic charge.

If we examine the lease in the instant case, it did not make a specific provision for the charges, other than rent, to be "additional rent." On the other hand, the evidence showed that both parties intended to enter into a triple-net lease and that Lessee would be obligated to make the other payments in exchange for reduced rent. Thus, some of the charges may have been related to the value of the property or the lease. Furthermore, some of the charges might have been fixed and payable in a regular, periodic fashion like the regular rent. These determinations are for the bankruptcy court to make. Therefore, we remand to the bankruptcy court with instructions to conduct further proceedings in accordance with this disposition.

*Id.* at 99–100. Although not universally adopted, this test has been employed by other bankruptcy courts. *In re Blatstein*, 1997 WL 560119, *13 (E.D.Pa.); *In re Andover Togs, Inc.*, 231 B.R. 521, 540 (Bankr.S.D.N.Y.1999); *In re PPI Enterprises, Inc.*, 228 B.R. 339, 349 (Bankr. D.Del.1998); *In re Pacific Arts Publishing, Inc.*, 198 B.R. 319, 323–24 (Bankr. C.D.Cal.1996). Although the B.A.P. was solely concerned with § 502(b)(6)(A), this test has been applied to claims under § 502(b)(6)(B). *McSheridan*, 184 B.R. at 99–100; *Blatstein*, 1997 WL 560119, *13; *Fifth Avenue Jewelers*, 203 B.R. at 381. The B.A.P. further held that "the lessor gets one claim and that claim is limited by § 502(b)(6); if a portion of the claim is disallowed under § 502(b)(6), the lessor cannot file an additional, separate claim based on the amounts disallowed as rent reserved." *Pacific Arts Publishing*, 198 B.R. at 323–24 (describing *McSheridan* holding); *McSheridan*, 184 B.R. at 102; *accord Blatstein*, 1997 WL 560119, *16; *but see In re Best Products Co., Inc.*, 229 B.R. 673 (Bankr.E.D.Va.1998) (damages not attributable to termination of lease were not subject to § 502(b)(6) limitation); *In re Atlantic Container Corp.*, 133 B.R. 980, 988 (Bankr.N.D.Ill.1991) (landlord's pre-petition claim for repair of debtor's damage to property was separate claim outside scope of § 502(b)(6)). I adopt the *McSheridan* test for determination of rent under § 502(b)(6)(A) & (B).

Landlord's claim is addressed by item as follows.

1. Landlord's charges of fixed minimum rent, CAM (common area maintenance), and taxes are allowed.[7] No timely objection to these charges was made.

2. Excused rent is disallowed.

■ Under Section 1.1(P) of the Lease, subheading "Fixed Minimum Rent—Abatement," Debtor was conditionally excused from paying all of the fixed minimum rent for the first four months of the Lease, and part of the fixed minimum rent for the next four months. The excused or abated amounts are referred to as "Excused Rent," and were excused on the condition that Debtor's account remained current.

In the event Tenant subsequently defaults in any of its obligations under the Lease and (if applicable) fails to timely cure such default, the Excused Rent shall immediately become due and payable to Landlord.

■ Under *McSheridan*, a charge is not determined to be rent by its label but by its substance. 184 B.R. at 99. Excused Rent meets the first prong of the *McSheridan* test because it is clearly identified as fixed minimum rent and is calculated as such. The second and third prongs of the test are not met. Landlord reduced the initial rent amount, the Excused Rent, so Excused Rent is not related to the value of the premises. Excused Rent only became due on default, when it was levied as a one-time, lump sum charge. It does not have the rent characteristic of being a fixed, regular or periodic charge. If Debtor had not defaulted, Landlord never would have received any Excused Rent monies. Therefore, Excused Rent is a penalty for default. Because Excused Rent fails the *McSheridan* test for rent and is in substance a penalty charge, it is

disallowed under § 502(b)(6)(B). *Fifth Avenue Jewelers*, 203 B.R. at 382 (disallowing portions of pre-petition state court judgment which were liquidated damages or service charges); *Fulton*, 148 B.R. at 844 (disallowing lease cancellation fee as a penalty).

One bankruptcy court has allowed "deferred rent" in a pre-petition claim. *In re Gantos, Inc.*, 181 B.R. 903 (Bankr. W.D.Mich.1995). In *Gantos*, a lease was amended to show that the landlord agreed to defer a portion of the fixed minimum rent due between July, 1992 and December, 1993, in exchange for an equivalent increase in the fixed minimum rent for the three years beginning February, 2000. The tenants petitioned for relief under chapter 11 in 1994, after the deferred-rent period and before the scheduled increase. The amended lease was rejected two months later. The landlord's pre-petition claim included the full amount of the deferred rent. The debtors/tenants objected that deferred rent was a post-petition charge, an obligation for future (February 2000 and later) additional rent that was capped by § 502(b)(6).

The court looked to a Sixth Circuit decision in which rent paid in arrears was classified as pre-petition based upon the rent's accrual date rather than the due date. *Id.*, *citing Vause v. Capital Poly Bag, Inc. (In re Vause)*, 886 F.2d 794 (6th Cir.1989) (where rent was paid in arrears under farm lease and bankruptcy petition was filed four days before annual rent payment date, claim for 361 days of pre-petition rent was allowed under § 502(b)(6)(B), since rent was "due and owing" though four days short of "payable"). The *Gantos* lease amendment was a concession by the landlord to temporarily forgo receipt of a portion of the rent, but that rent had nonetheless accrued during each "deferred," pre-petition month.

---

7. CAM, taxes, and insurance (here included in CAM) are generally held to be rent in net lease claims governed by § 502(b)(6). *Blatstein*, 1997 WL 560119, *13; *Andover Togs*,

231 B.R. at 540–42; *Fifth Avenue Jewelers*, 203 B.R. at 381; *Fulton*, 148 B.R. at 844 (allowing CAM; taxes not at issue).

Deferred rent was allowed as a pre-petition claim, since it was due and owing during the months of July, 1992 through December, 1993 (i.e. pre-petition), even though the landlord had agreed not to collect until February, 2000 (post-petition).

Unlike *Gantos,* the parties here did not provide that the Excused Rent was a concession scheduled for repayment by designated future payments. Instead, Excused Rent was a concession for which no repayment was required. Landlord here did not agree to *temporarily* forgo receipt of rent payments; Landlord agreed to *permanently* forgo payment, absent default. Therefore, the Excused Rent in this case is not comparable to rent paid in arrears. *Gantos* was decided based on a different set of facts than presented here, and therefore does not apply here.

3. The unamortized building allowance is disallowed.

 The unamortized building allowance is addressed in Section 1.1(N) of the Lease, which provides that Landlord will contribute up to $38,250.00 toward construction work required to make the premises suitable for conduct of Debtor's business. Section 1.1(N) concludes,

> In the event Tenant subsequently defaults in any of its obligations under the Lease and (if applicable) fails to timely cure such default, Tenant shall immediately reimburse Landlord the unamortized (per month, straight line basis) portion of the foregoing allowance paid to Tenant.

The unamortized building allowance does not meet the requirements of the *McSheridan* test. It is not designated as rent. Absent default, Landlord had no expectation of recouping any part of the $38,250.00, so the building allowance cannot be related to the value of the property or the Lease. The building allowance only became due on default, when the unamortized portion was levied as a one-time, lump sum charge. It was never a fixed, regular or periodic charge. The building

allowance cannot be characterized as rent, and is therefore disallowed under § 502(b)(6)(B). *Fifth Avenue Jewelers,* 203 B.R. at 381; *Gantos,* 181 B.R. at 907 (on similar facts, disallowing "construction allowance"); *Fulton,* 148 B.R. at 844.

In different circumstances, a bankruptcy court has allowed building allowance amounts in a § 502(b)(6) claim. *Blatstein,* 1997 WL 560119, *13. The *Blatstein* court's reasoning, however, supports disallowing the building allowance claimed in this Lease. The lease in *Blatstein* called for monthly payment of both "base rent" and "amortized improvement costs," which together were named "total rent." Amortized improvement costs were allowed under the *McSheridan* rent test because they were designated as rent, related to the value of the premises, and paid on a fixed, regular, and periodic basis. Here, however, the Lease does not provide that the building allowance is repaid as a consistent monthly amount. Instead, it comes due only upon default. *Blatstein's* analysis of the *McSheridan* rent test calls for the building allowance in this case to be disallowed. *See also Andover Togs,* 231 B.R. at 537–39 (citations omitted) (in chapter 11 lease termination damages claim, distinguishing between capital costs necessary to obtain successor tenants (allowed), and capital costs yielding long-term improvement to the leasehold (not allowed)).

4. Late charges are disallowed.

 Late charges are described in subsection 3.8 of the Lease, "Additional Rent."

> ... Should Tenant fail to make any payment of Rent as and when required such unpaid amounts shall bear additional handling charges from the due date thereof to the date of payment at the rate of the greater of five percent (5%) of the amount due per month, $100.00 or $10.00 per day for each day that the Rent has not been paid. ...

Landlord has charged $10.00 per day for the pre-petition period. Although late

**340**

charges are defined as "Additional Rent," claims are allowed not according to labels but substance. *McSheridan,* 184 B.R. at 99. Late charges do not meet the second and third prongs of the *McSheridan* rent test: they are not tied to the value of the property; and they are not due on a regular, periodic or fixed basis, but only when a payment is in fact late. Late charges are a penalty for untimely payment. It is not rent and is not allowed. *PPI Enterprises,* 228 B.R. at 349–50; *Fifth Avenue Jewelers,* 203 B.R. at 381; *Fulton,* 148 B.R. at 844.

5. Interest is disallowed.

 Landlord claims entitlement to interest under Georgia law. O.C.G.A. §§ 44–7–16; 7–4–2; and 7–4–15. Whether or not so entitled, interest is disallowed under the language of § 502(b)(6)(B) because it is simply not unpaid rent. Interest fails all prongs of the *McSheridan* test: it is not named as rent or additional rent in the Lease, it is not related to the value of the property, and rather than being due regularly it is only due upon default.

6. Attorney fees are not allowed.

 Attorney fees are included in the types of obligations defined as "Taxes" in Lease section 4.2, which is incorporated into "Additional Rent." Incorporating attorney fees into "Additional Rent" does not change the fact that they do not possess the characteristics of rent called for by the *McSheridan* test. *McSheridan,* 184 B.R. at 99–100. Attorney fees are disallowed under § 502(b)(6)(A) and (B). *PPI Enterprises,* 228 B.R. at 349; *Blatstein,* 1997 WL 560119, *16; *Pacific Arts,* 198 B.R. at 324; *Fulton,* 148 B.R. at 844.

Landlord cites three cases in which attorney fees were allowed claims in bankruptcies. *Mills v. East Side Investors (In* *re East Side Investors),* 702 F.2d 214 (11th Cir.1983); *Chemical Bank v. Grigby's World of Carpet, Inc. (In re WWG Industries, Inc.),* 44 B.R. 287 (N.D.Ga.1984); *Mills v. East Side Investors (In re East Side Investors),* 7 B.R. 515 (N.D.Ga.1980). None are on point, because the cases did not concern leases and the claims were not limited by the provisions of § 502(b)(6).

In summary, Landlord correctly used the bankruptcy filing date of May 7, 1999, in calculating its claim. Landlord's charges for rent, CAM, and taxes, both pre-petition ($71,999.45) and post-petition ($23,798.94), for a total of $95,798.39 were correctly calculated and allowed under § 502(b)(6)(A) & (B). Landlord's pre-petition charges for excused rent ($19,125.00), unamortized building allowance ($14,-662.50), late charges ($4,600.00), interest ($6,191.15) and attorneys fees ($11,682.81), though recoverable under the lease and Georgia law are beyond the cap on allowable claims under § 502(b)(6)(B).

It is, therefore, ORDERED that the Debtor's objection to the amended Proof of Claim of Sprayberry Square Holdings, Inc. is sustained in part. The claim is ORDERED allowed as to fixed minimum rent, common area maintenance and taxes, both pre-petition ($71,999.45) and post-petition ($23,798.94), in the total amount of $95,798.39, and disallowed as to excused rent ($19,125.00), unamortized building allowance ($14,662.50), late charges ($4,600.00), interest ($6,191.15) and attorneys fees ($11,682.81).