**In re PLANET HOLLYWOOD INTERNATIONAL, et al.,
Debtors.**

**Nos. 99–3612 MFW to 99–3637 MFW.**

United States Bankruptcy Court,
D. Delaware.

Aug. 30, 2001.

Opinion denying modification
of Order Oct. 19, 2001.

---

Pauline K. Morgan, Esquire, M. Blake Cleary, Esquire, Young Conaway Stargatt & Taylor, LLP, Wilmington, DE, Scott W. Spradley, Esquire, Gray, Harris & Robinson, P.A., Orlando, FL, for Debtors.

Jason Staib, Esquire, Gregory Werkheiser, Esquire, Morris Nichols Arsht &

Tunnell, LLP, Wilmington, DE, Myron Trepper, Esquire, Tonny K. Ho, Esquire, Wilkie Farr & Gallagher, New York City, for the Official Committee of Unsecured Creditors.

Christopher S. Sontchi, Esquire, Ashby & Geddes, Wilmington, DE, Peter Gallagher, Esquire, Salans Hertzfeld Heilbronn Christy & Viener, New York City, for Credit Lyonnais New York Branch.

### MEMORANDUM OPINION [1]

MARY F. WALRATH, Bankruptcy Judge.

Before the Court is the Motion of Credit Lyonnais New York Branch ("CLNY") for Summary Judgment on the Debtors' Amended Objection to the Amended Proof of Claim of CLNY. For the reasons set forth below, we grant CLNY's Motion and allow, in part, its claim in the amount of $2,294,647.

## I. BACKGROUND

In March, 1997, Credit Lyonnais (Suisse) S.A. ("CLS") loaned approximately $5 million to Mediaroma Roman Frumson ("Mediaroma") to finance the construction of a Planet Hollywood restaurant in Zurich, Switzerland. As security, CLS took mortgages on three parcels of real property ("the Properties"). Additionally, the loan was secured by a stand-by letter of credit of approximately $5.2 million ("the Letter of Credit") issued by CLNY at the request of Planet Hollywood, Inc. ("the Debtor"). Under a Reimbursement Agreement dated July 2, 1997, the Debtor agreed to reimburse CLNY for any amount paid by CLNY to CLS under the Letter of Credit "immediately upon demand without set-off, counterclaim or other deduction of any nature whatsoever." In order to assure that CLS sought to collect its debt from the Properties first, the Reimbursement Agreement provided that CLS could draw on the Letter of Credit only after 18 months from declaration of a default.

On March 31, 1998, Mediaroma failed to make an interest payment due to CLS under the terms of the loan, and on April 28, 1998, CLS declared a default. In July, 1998, CLS commenced a foreclosure action against the Properties under Spanish law. Under that procedure, an auction of the Properties occurred in three stages. At the first auction, bidders were required to bid 100% of the mortgage value of the Properties. No qualified bids were received at the first auction; therefore, a second auction was held at which bidders were required to bid 75% of the mortgage value of the Properties. No qualified bids were received at the second auction, and the Properties were auctioned a third time.[2] Only one of the Properties, an apartment, received a bid of at least 75% of its mortgage value and was sold at the third auction.

The Debtor sought to have the two remaining Properties auctioned a fourth time and to have CLNY purchase the Properties so they could be sold privately for a profit, thereby reducing the Debtor's debt to CLNY. By letter agreement dated June 25, 1999 ("the Letter Agreement"), the Debtor agreed that if CLNY purchased the Properties at the auction, the Debtor would remain obligated to repay CLNY

---

1. This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052, which is made applicable to contested matters by Federal Rule of Bankruptcy Procedure 9014.

2. The third auction also contained a minimum bid requirement, although the amount is not stated in any of the pleadings or affidavits submitted.

pursuant to the Reimbursement Agreement. Consequently, in October, 1999, CLNY purchased the two remaining Properties at a fourth auction, paying CLS approximately $3.1 million.

On November 12, 1999, the Debtor, together with several affiliates, filed a petition for relief under chapter 11 of the Bankruptcy Code. On November 15, 1999, CLS sent a telex to CNLY demanding payment under the Letter of Credit. As a result of that demand, CLNY paid CLS $2,490,333 on November 22, 1999.

On December 13, 1999, CLNY filed a proof of claim in the amount of $4,690,668 allegedly due under the Reimbursement Agreement. The Properties were subsequently sold by CLNY to third parties in March and July 2000, for approximately $3.8 million. On December 21, 2000, the Debtor objected to the claim, asserting it was contingent and the Properties had a value in excess of the claim. On January 10, 2001, CLNY amended its claim to $2,370,420. On April 6, 2001, the Debtor filed the Amended Objection. Presently pending is the Motion of CLNY for Summary Judgment allowing its claim.

## II. JURISDICTION

This Court has jurisdiction under 28 U.S.C. § 157(b)(2)(B) and (O).

## III. DISCUSSION

### A. Burden of Proof

■ Initially, a claimant must allege facts sufficient to support a legal basis for the claim. If the assertions in the filed claim meet this standard of sufficiency, the claim is prima facie valid pursuant to Rule 3001(f) of the Federal Rules of Bankruptcy Procedure. See, e.g., In re Allegheny International, Inc., 954 F.2d 167, 173 (3d Cir.1992). If no party in interest objects

to such a claim, it is deemed allowed. 11 U.S.C. § 502(a).

■ Where an objection is filed, the objecting party bears the initial burden of presenting sufficient evidence to overcome the presumed validity and amount of the claim. See, e.g., Smith v. Sprayberry Square Holdings, Inc. (In re Smith ), 249 B.R. 328, 332–33 (Bankr.S.D.Ga.2000) (citations omitted) ("if the objecting party overcomes the prima facie validity of the claim, then the burden shifts to the claimant to prove its claim by a preponderance of the evidence").

■ Having filed a motion for summary judgment, CLNY bears the burden of proving that no genuine issue of material fact exists regarding the allowance of its claim. See, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n. 10, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "Facts that could alter the outcome are 'material' ... and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." Horowitz v. Fed. Kemper Life Assurance Co., 57 F.3d 300, 302 n. 1 (3d Cir.1995) (internal citations omitted).

Once the moving party establishes the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586, 106 S.Ct. 1348. A party may not defeat a motion for summary judgment unless it sets forth specific facts, in a form "that would be admissible at trial," that establish the existence of a genuine issue of material fact for trial. Fed. R. Bankr.P. 56(e). See also Fireman's Ins. Co. of Newark, N.J. v. DuFresne, 676 F.2d 965, 969 (3d Cir.1982) ("Rule 56(e) does not allow a party resisting the motion to rely merely upon bare

assertions, conclusory allegations or suspicions"); *Olympic Junior, Inc. v. David Crystal, Inc.*, 463 F.2d 1141, 1146 (3d Cir. 1972) ("conclusory statements, general denials, and factual allegations not based on personal knowledge would be insufficient to avoid summary judgment"); *Tripoli Company, Inc. v. Wella Corp.*, 425 F.2d 932, 935 (3d Cir.1970) (in order to defeat summary judgment motion, "a party must now come forward with affidavits setting forth specific facts showing that there is a genuine issue for trial"). The Third Circuit has specifically held that unsworn statements of counsel in memoranda submitted to the court are "insufficient to repel summary judgment." *Schoch v. First Fidelity Bancorporation*, 912 F.2d 654, 657 (3d Cir.1990).

### B. *The Merits of CLNY's Motion for Summary Judgment*

Among the bases for its claim, CLNY asserts that the Debtor is obligated to repay the money CLNY paid to CLS pursuant to the Reimbursement Agreement. Further, CLNY asserts that the Debtor is liable for CLNY's costs associated with the purchase of the Properties at foreclosure and their subsequent resale pursuant to the Reimbursement Agreement and the Letter Agreement. These expenses comprise "substantial direct costs, including . . . transfer taxes, a non resident tax, back taxes, charges and fees owed on the Properties, improvement costs, appraisal costs and legal fees."

The Amended Objection has four bases: CLNY wrongfully honored the Letter of Credit by paying CLS in the absence of a properly and fully executed drawing certificate and lack of documentation of CLS' costs; the $1.4 million in expenses associated with the Letter of Credit and the sale of the collateral by CLNY should be borne by CLNY, rather than the Debtor; the costs incurred by CLNY are not properly documented; and the costs were not reasonable in light of the proceeds received on sale of the Properties.

### 1. *Improper Honor of CLS' Demand upon the Letter of Credit*

■ The Debtor asserts that CLNY's claim should be denied, because the certificate of drawing by CLS was not properly executed prior to CLNY's honoring the Letter of Credit.

In response, CLNY presented evidence, by Affidavit of Ronald Finn, Co–General Counsel and Senior Vice President of CLNY, that the Letter of Credit requires CLNY to honor any draw by CLS upon presentation of a written certificate "in the form of a letter on [CLS'] letterhead or in the form of a tested telex." (*See* Finn Affidavit at ¶ 15, Exhibits B & E at pp. 44–45.) CLNY presented evidence that this was done. Mr. Finn testified at his deposition that on November 15, 1999, CLS presented a certificate for drawing by tested telex. (*See* Finn Affidavit at Exhibit E, pp. 34–35.) This testimony is supported by a copy of the telex. (*See* Finn Affidavit at Exhibit D.)

The Debtor presented no evidence whatsoever to rebut this. We conclude, therefore, that there is no genuine issue of material fact on this point. *See* cases cited at Part A, *supra.*

The Debtor also asserts that CLNY improperly paid on the Letter of Credit because, before CLS could make a demand thereunder, CLS was obligated to make a reasonable effort to liquidate the collateral. The Debtor asserts that because CLNY did not demand documentation from CLS to support the costs incurred by CLS in attempting to liquidate the Properties, the reasonableness of CLS' efforts is a disputed issue.

CLNY asserts, however, that under the Letter of Credit it was obligated to pay once a certificate was submitted by CLS. Further, once CLNY paid CLS, the Reimbursement Agreement required the Debtor to pay CLNY "immediately upon demand without set-off, counterclaim or any other deduction." (*See* Reimbursement Agreement at ¶ 1.) Paragraph 4 of the Reimbursement Agreement expressly states that CLNY shall not be responsible for any act or omission of CLS. (*Id.* at ¶ 4.)

Based on the language of the Letter of Credit and Reimbursement Agreement, we conclude that the Debtor cannot raise as a defense to CLNY's claim any failure of CLS to use reasonable efforts to sell the Properties. CLNY paid CLS under the Letter of Credit pursuant to a written certificate and the Debtor agreed to repay CLNY without any deduction.

### 2. *The Burden of Paying the Costs of Sale*

The Debtor asserts that CLNY should bear the burden of the costs associated with the sale of the Properties. Based upon the Reimbursement Agreement and the Letter Agreement, we reject the Debtor's argument.

In paragraph 2 of the Reimbursement Agreement, signed by Robert Earl, president and CEO of the Debtor, the Debtor agreed to indemnify CLNY against all loss, cost or expense suffered or incurred by CLNY arising by reason of the issuance of the Letter of Credit. The Debtor further agreed to reimburse CLNY for "all charges and expenses, paid or incurred by [CLNY] in connection with the enforcement of [CLNY's] rights hereunder and collection of amounts due to [CLNY], including without limitation, the fees and disbursements of [CLNY's] legal counsel."

Further, pursuant to the Letter Agreement, the Debtor agreed that if CLNY purchased the Properties at auction, "its purchase will not relieve Planet Hollywood of its obligations under the [Reimbursement Agreement] and that Planet Hollywood will hold all and each of them harmless from any and all further loss, including the costs associated with the purchase and subsequent sale of the property."

Accordingly, the Debtor's argument that CLNY should bear the costs associated with the purchase and sale of the Properties is baseless.

### 3. *Documentation of the Claim*

■ In the Amended Objection filed on April 6, 2001, and the reply to CLNY's Motion for Summary Judgment filed on May 23, 2001, the Debtor asserts that CLNY has failed to document its claim adequately, specifically costs and other expenses totaling $1.4 million. The Debtor further asserts that the only documentation which CLNY produced was a one page line item with no breakdown for legal costs and expenses, correspondence from a Spanish law firm to CLS describing services rendered, and incomplete and unsubstantiated documentation of costs without any significant breakdown.

On this point, CLNY has filed the Affidavit of Peter Gallagher which includes, as Exhibit A, a summary of the expenses and proceeds of the resale of the Properties. Exhibit A details 28 expenses paid by CLNY under the Reimbursement Agreement, including the payment to CLS, capital gains tax, legal fees, transfer taxes, appraisal fees, commissions, and withholding taxes. Behind the summary are fifty-seven (57) pages of documentation supporting those expenses, including invoices and bills from foreign attorneys. Also attached is a summary of the five payments received by CLNY (from the sale of the

Properties) totaling $3,789,589, and documentation of those payments. Upon review of Exhibit A and the other pleadings, we find only three defects in CLNY's proof of claim.

First, according to Exhibit A, CLNY incurred expenses of $6,140,574, and received payments of $3,789,589. The difference between the two is $2,350,985. CLNY's Amended Proof of Claim asserts that the Debtor owes CLNY $2,370,420, a difference of $19,435. CLNY has admitted that its claim is only $2,350,985. (*See* Finn Affidavit at ¶ 19.)

Second, $55,938 of expenses were incurred in connection with the "Stella Frumson settlement." There is no evidence that the Stella Frumson settlement was related to the Agreements between CLNY and the Debtor. In the absence of any evidence, we will deny reimbursement of $55,938 of CLNY's claim.

Finally, Exhibit A has a handwritten deduction of $400 from the legal fees of Salans Hertzfeld. This amount is not deducted in CLNY's typed total. In the absence of any explanation for not including that deduction, we will deduct it from the amount sought.

Based upon the affidavits and exhibits submitted, there is no other genuine issue of material fact as to the expenses incurred by CLNY. The Debtor has not presented any evidence to refute CLNY's claim or challenge the validity of the documentation submitted by CLNY in support of its claim. We conclude that CLNY's documentation satisfactorily supports a claim in the amount of $2,294,647.

### 4. *The Reasonableness of the Expenses*

■ The Debtor asserts that the $1,469,668 in expenses which CLNY incurred in connection with the foreclosure proceedings conducted in Spain was not reasonable in light of the fact that only $3.7 million was received on sale of the Properties. Additionally, the Debtor asserts that CLNY did not properly monitor, authorize, or question the costs and expenses incurred through the purchase and sale of the collateral. The Debtor therefore asserts that a genuine question of material fact exists as to the reasonableness of the fees and costs incurred. It seeks more discovery of the principal parties who incurred, or allowed to be incurred, the costs and expenses in furtherance of the sale of the collateral.

However, mere allegations without factual support are insufficient to defeat a motion for summary judgment which is supported by competent evidence in the form of sworn affidavits. *See* cases cited at Part A, *supra.* In this case, CLNY submitted the Affidavits of Finn and Gallagher to support the reasonableness of its expenses. According to Exhibit A of Gallagher's Affidavit, CLNY incurred a total of $6,140,574 in expenses. Among the 28 entries in Exhibit A, three entries comprise the vast majority of the expenses: $2,490,333 to CLS for payment under the Letter of Credit, $2,025,478 to CLS at the fourth auction for the Properties, and $1,116,162 for the deposit made on the Properties. Together, these total $5,631,973. These expenses were either required under the Letter of Credit or incurred at the specific request of the Debtor. They are therefore not contested.

Other expenses detailed in Exhibit A include $257,720 for taxes, interest on taxes and commissions on drafts to pay taxes. An additional $42,506 are sundry expenses, including real estate appraisal fees, costs associated with the upkeep of the Properties, insurance, gas, electricity, gardening, common charges and registration fees. We conclude upon review of the miscella-

neous expenses that they are ordinary, necessary, and reasonable expenses in preserving the Properties.

The only real issue as to reasonableness is the legal expenses (which now total $152,437 after deduction of the $400 in legal fees addressed in Part B(3), *supra*). Originally, the Debtor objected to these expenses merely because they represented more than a third of the sales proceeds received by CLNY. After deducting the above "direct" expenses, however, the legal fees sought in connection with the purchase and repurchase of the Properties represent less than five percent of the proceeds.

Therefore, we conclude that the fees are not unreasonable, particularly in light of the entire transaction among the Debtor, CLNY, and third party purchasers. The Debtor has presented no competent evidence to dispute the reasonableness of the fees or that they were incurred. Accordingly, we overrule the Debtor's objection.

## IV. CONCLUSION

For the reasons stated above, we overrule the Debtor's objection and allow CLNY's claim in the amount of $2,294,647.

### MEMORANDUM OPINION [1]

Before the Court is the Motion of Credit Lyonnais New York Branch ("CLNY") Requesting Modification of this Court's August 30, 2001, Order. It is opposed by Planet Hollywood International, Inc. ("the Debtor"). For the reasons set forth below, we deny CLNY's Motion.

**1.** This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052, which is made applicable to contested matters by Federal Rule of Bankruptcy Procedure 9014.

## I. BACKGROUND

In a Memorandum Opinion and Order dated August 30, 2001, we granted the Motion of CLNY for Summary Judgment on the Debtors' Amended Objection to the Amended Proof of Claim of CLNY and allowed its claim in the amount of $2,294,647. We disallowed a part of that claim (in the amount of $56,338) because CLNY had not provided sufficient evidence to establish that that expense was payable by the Debtor. In all other respects, we allowed the claim.

Subsequent to our decision, the Debtor filed a timely appeal. As a result, the Debtor has not paid the CLNY claim, citing the Debtor's confirmed Plan which requires payment only of Allowed Claims, which are defined as claims which have been allowed by a final order no longer subject to appeal. (*See* Plan at §§ 1.4, 1.52, 6.3.1 and 8.5.)

On September 17, 2001, CLNY filed the instant Motion by which CLNY seeks an Order directing the Debtor to make an immediate distribution of the amounts due to it under the Plan [2] or alternatively to escrow that sum until the appeal is completed. The Debtor objected, asserting that the Motion seeks a modification of the Debtor's confirmed Plan which is not permissible. After a hearing on the Motion held on September 27, 2001, we permitted the parties to submit additional briefs by October 5, 2001.

## II. JURISDICTION

This Court has jurisdiction under 28 U.S.C. § 157(b)(2)(B) and (O).

**2.** Since the claim was allowed as a general unsecured claim, it is entitled only to a pro rata distribution of cash and notes made available to Class 6 creditors.

## III. DISCUSSION

### A. Motion for Reconsideration

■ A motion for reconsideration under Federal Rule of Bankruptcy Procedure 9023 is an extraordinary means of relief in which the movant must do more than simply reargue the facts or law of the case. *See North River Ins. Co. v. CIGNA Reinsurance Co.,* 52 F.3d 1194, 1218 (3d Cir. 1995) (a motion to reconsider must rely on one of three major grounds: "(1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error [of law] or prevent manifest injustice") (*quoting Natural Resources Defense Council, Inc. v. United States Envtl. Protection Agency,* 705 F.Supp. 698, 702 (D.D.C.1989)); *Harsco Corp. v. Zlotnicki,* 779 F.2d 906, 909 (3d Cir.1985) ("The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence."); *Dentsply Int'l., Inc. v. Kerr Mfg. Co.,* 42 F.Supp.2d 385, 417 (D.Del.1999) ("[motions for re-argument] should be granted sparingly and should not be used to rehash arguments already briefed or allow a 'never-ending' polemic between the litigants and the Court").

CLNY asserts that its motion should be granted because of the change in the Debtor's financial condition. *See, e.g., Commonwealth of Pennsylvania State Employees' Retirement Fund v. Durkalec (In re Durkalec),* 21 B.R. 618, 619–20 (Bankr. E.D.Pa.1982) (court may vacate or modify order on basis of debtor's changed financial circumstances). Specifically, CLNY points to the Debtor's Annual Report filed with the SEC which evidences a drop in the Debtor's cash reserves from $14.1 million at the end of 2000 to $3.1 million in July 2001 and an increase in the Debtor's accounts payable from $18.4 million to $38.7 million during that same period.

(*See* Exhibits C and D attached to CLNY's Motion.)

■ Without contesting the facts presented by CLNY, the Debtor argues that CLNY cannot obtain the relief it is requesting because it is essentially seeking a modification of the Debtor's Plan. It asserts that CLNY cannot, under the guise of a motion for reconsideration, modify the plan. *See, e.g., Branchburg Plaza Assocs., L.P. v. Fesq (In re Fesq),* 153 F.3d 113, 116 (3d Cir.1998) (in holding that motion for reconsideration and revocation of chapter 13 confirmation order could not be granted except to the extent it met the requirements of section 1220(a), court concluded that the Bankruptcy Rules cannot provide a substantive remedy which the Bankruptcy Code has foreclosed); *In re Rickel & Assoc., Inc.,* 260 B.R. 673, 678 (Bankr.S.D.N.Y.2001) (movant could not use motion under section 105(a) or Rule 60(b) to bypass the requirements of section 1127(b) for modification of a confirmed plan).

■ We agree with the Debtor's characterization of CLNY's Motion. That Motion asks the Court to modify the August 30 Order in a manner that would conflict with the Plan which has been confirmed. Specifically, CLNY asks that we require the Debtor to pay it a distribution on its claim, before the claim is finally allowed. This conflicts with section 8.5 of the plan which states that "Notwithstanding any other provisions of the Plan, no payments or distributions shall be made on account of a Disputed Claim until such Claim ... becomes an Allowed Claim...." The Plan binds all creditors and other parties in interest including CLNY.

CLNY is bound by the terms of the Plan and cannot ask for relief inconsistent with the Plan. 11 U.S.C. § 1141 ("the provisions

of a confirmed plan bind ... any creditor").

B. *Standing to Modify the Plan*

■ CLNY argues, however, that the Plan should be modified because of changed circumstances since confirmation of the Plan. It asserts that the failure of the Plan to include a reserve for disputed claims may have been warranted at the time of confirmation, but is no longer reasonable given the Debtor's deteriorating financial condition.

The Debtor asserts that CLNY does not have standing to request a modification of the Plan. Section 1127(b) of the Bankruptcy Code provides that only a plan proponent or the reorganized debtor may modify a plan (and only under certain express circumstances). 11 U.S.C. § 1127(b). *See also, United States Trustee v. CF & I Fabricators of Utah, Inc. (In re CF & I Fabricators of Utah, Inc.)*, 150 F.3d 1233, 1238 (10th Cir.1998) ("a plan can only be modified by a plan proponent or reorganized debtor"); *Universal Cooperatives, Inc. v. FCX, Inc. (In re FCX, Inc.)*, 853 F.2d 1149, 1158 n. 13 (4th Cir.1988) (" § 1127(b) allows only the proponent of a plan or a reorganized debtor to initiate post-confirmation modification"); *Goodman v. Phillip R. Curtis Enterprises, Inc. (In re Goodman )*, 809 F.2d 228 (4th Cir. 1987) (Bankruptcy Court could not sua sponte modify plan, modification had to be sought by proper party under section 1127(b)); *In re Charterhouse, Inc.*, 84 B.R. 147, 151 (Bankr.D.Minn.1988) (creditors' committee was not plan proponent and therefore lacked standing to seek modification of plan).

We agree with the Debtor. Section 1127(b) provides:

The *proponent of a plan or the reorganized debtor* may modify such plan at any time after confirmation of such plan and before substantial consummation of such plan, but may not modify such plan so that such plan as modified fails to meet the requirements of sections 1122 and 1123 of this title.

11 U.S.C. § 1127(b)(emphasis added).

The Plan incorporates section 1127(b) by providing at section 14.13(b) that:

After the entry of the Confirmation Order, [the Debtor] may, with the consent of the Creditors' Committee and in accordance with Section 1127(b) of the Bankruptcy Code, amend or modify this Plan, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the plan....

Therefore, we conclude that CLNY lacks standing to request a modification of the Plan.

C. *Requested Modification Is Not Permissible*

■ Even if CLNY had standing, the modification of the confirmed plan requested by it is not permissible. Section 1127(b) permits modifications only if the plan as modified would otherwise be confirmable under the Code. This modification is not. CLNY is requesting that its disputed claim be treated different from (and in preference to) other disputed claims by requiring that the Debtor pay its claim now (or escrow for its benefit alone sufficient funds to pay its claim when allowed). Under the Plan, no other disputed creditor is entitled to that treatment and therefore this modification would violate the provisions of section 1123(a)(4) of the Code. Such a modification is not permissible under section 1127(b).

D. *Stay Pending Appeal*

CLNY argues that the effect of not requiring the Debtor to pay it a distribution

now results in the Debtor obtaining a stay of our August 30 Order pending appeal. CLNY asserts that the Debtor would not be able to obtain such a stay under the standards normally required for such relief. *See, e.g., In re Trans World Airlines, Inc.,* 18 F.3d 208, 211 (3d Cir.1994). Specifically, CLNY asserts the Debtor does not have a likelihood of success on the merits of its appeal but is merely appealing to delay making any payment to CLNY. Further, CLNY asserts that it will be irreparably harmed by the "stay" because the delay will allow the Debtor's financial condition to deteriorate to the point where it will be unable to pay CLNY at all. It asserts that the balance of the equities favors it and that the Debtor is not entitled to a stay of the effect of our Order.

Even if CLNY is correct, however, we are unable to afford it any relief. We are not being asked to grant the Debtor a stay of our August 30 Order pending appeal. The Plan, which has already been confirmed, in effect already provides such relief. The Bankruptcy Code and the Plan prohibit any modification by CLNY.

### E. *Inconsistency of the Plan*

CLNY also argues that the modification is necessary to correct inconsistencies in the Plan and to prevent the Plan from violating the Bankruptcy Code. CLNY asserts that not granting it payment now will effectively preclude it from receiving any distribution under the Plan. Because some creditors have already received a distribution, this will result in unequal treatment of creditors in violation of section 1123(a)(4).

We disagree. The Plan provides that all allowed class 6 creditors will receive the same treatment. To get that treatment, CLNY must have an allowed claim. If it does not have an allowed claim, it is not entitled to payment under the Plan (or the Code).

CLNY argues, however, that the Court's finding that the Plan was feasible in the confirmation order is no longer valid. It argues that the Confirmation Order suggests that in such changed circumstances the terms of the Plan should not be enforced. In support of its argument, CLNY cites paragraph 48 of the Confirmation Order which provides that if the Plan is not consummated "nothing contained herein shall be deemed ... to prejudice in any manner the rights of the Debtors or any Persons in any further proceedings involving the Debtors; and (b) the result shall be the same as if this Order were not entered."

However, CLNY has not presented any evidence that the Debtor has not consummated the Plan. In fact it acknowledges that the Debtor did pay some creditors, it has simply not paid CLNY because its claim is disputed. To the extent that CLNY argues that the Debtor has not consummated the Plan by not paying it, the Debtor is correct is stating that under the terms of the Plan it has no obligation to pay CLNY yet. In the event that CLNY's claim is ultimately allowed by final order and the Debtor does not comply with the terms of the Plan and Confirmation Order, CLNY would have whatever rights it has under paragraph 48 of the Confirmation Order.

Furthermore, CLNY is not seeking a complete voiding of the Confirmation Order; rather it is seeking to modify only the provisions of the Plan that prevent it from being paid now. As noted above, that is not permissible.

### IV. *CONCLUSION*

For the reasons stated above, we deny the Motion of CLNY Requesting Modifica-

tion of This Court's August 30, 2001, Order.