**IN RE: F-SQUARED INVESTMENT MANAGEMENT, LLC, et al., Debtors.**

**Case No. 15–11469 (LSS) Jointly Administered**

United States Bankruptcy Court, D. Delaware.

Signed 03/18/2016

tive creditors

Joseph Charles Barsalona II, Rachel Layne Biblo, Brendan Joseph Schlauch, Zachary I. Shapiro, Russell C. Silberglied, Amanda R. Steele, Richards, Layton and Finger, Wilmington, DE, for Debtors.

## MEMORANDUM ORDER

Laurie Selber Silverstein, United States Bankruptcy Judge

(i) DISMISSING, WITHOUT PREJUDICE, DEBTORS' THIRD OMNIBUS OBJECTION (SUBSTANTIVE) TO THE PROOFS OF CLAIM OF PLAINTIFFS IN THE PUTATIVE CLASS ACTION *YOUNGERS V. VIRTUS INV. PARTNERS, INC.*; and

(ii) GRANTING, IN PART, MOTION OF THE YOUNGERS PLAINTIFFS FOR RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(d) TO PROCEED WITH THE YOUNGERS LITIGATION

Before the Court is the objection (the "Claim Objection"[1]) of the F2 Liquidation Trust (the "Trust") to three class proofs of claim, which were filed by Mark Youngers, Kimball Lloyd, and Frances Briggs (together, the "Youngers Plaintiffs"), as the court appointed lead plaintiffs on behalf of themselves and other similarly situated class members (the "Class Members") in a class action (the "Youngers Action"[2]) now pending in the United States District Court for the Southern District of New York (the "District Court"), and the Youngers Plaintiffs' motion (the "Lift Stay Motion"[3]) seeking an order lifting the automatic stay to permit the Youngers Action to proceed in the District Court. Having determined that the Court has jurisdiction to consider the Objection and the Lift Stay Motion as core proceedings pursuant to 28 U.S.C. §§ 157(b)(2)(B), (G), (O) and 1334; and having considered (i) the Objection, the Youngers Plaintiffs' response[4] and the Trust's reply[5] to the Objection; (ii) the Lift Stay Motion and the Trust's response to the Lift Stay Motion;[6] (iii) the Youn-

---

1. *Debtors' Third Omnibus Objection (Substantive) to the Proofs of Claim of Plaintiffs in the Putative Class Action Youngers v. Virtus Inv. Partners, Inc.* [Dkt. No. 400] ("Obj.")

2. *Youngers v. Virtus Investment Partners, Inc.*, 15–cv–8262–WHP (S.D.N.Y.2015)

3. *Motion of the Youngers Plaintiffs for Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362(d) to Proceed with the Youngers Litigation* ("Lift Stay Motion") [Dkt. No. 468]

4. *Youngers Plaintiffs' Response to Debtors' Third Omnibus Objection to Claims* [Dkt. No. 464]

5. *Debtors' Reply in Further Support of the Debtors' Third Omnibus Objection (Substantive) to the Proofs of Claim of Plaintiffs in the Putative Class Action Youngers v. Virtus Inv. Partners, Inc.* ("Objection Reply") [Dkt. No. 503]

6. *Liquidating Trust's Response to the Youngers Plaintiffs' Motion for Relief from the Automatic Stay* ("Lift Stay Response") [Dkt. No. 528]

gers Proofs of Claim,[7] the second amended complaint in the Youngers Action (the "Second Amended Complaint") and documents referenced therein;[8] (iv) the arguments made by counsel at the hearings conducted before this Court on January 26, 2016[9] and February 18, 2016;[10] and it appearing that adequate notice was given of the Objection and the Lift Stay Motion; and after due deliberation, the Court **FINDS** as follows:

Background

1. Prepetition, F–Squared Institutional Advisors, LLC, F–Squared Investment Management, LLC, and F–Squared Investments, Inc. (collectively, the "Debtors" or "F–Squared") marketed and managed an investment strategy known as the "AlphaSector Strategy" to securities wholesalers and brokers.[11] The AlphaSector Strategy was based on an algorithm that produced signals indicating whether an investment fund should buy or sell shares in nine industry exchange traded funds.[12]

2. The Youngers Plaintiffs initiated the Youngers Action against Virtus Investment Partners ("Virtus"), certain entities related to Virtus, the Debtors, and certain of their respective officers and directors.[13]

3. In that action, the Youngers Plaintiffs allege that, beginning in the fall of 2009, Virtus and F–Squared cooperated to create and manage mutual funds that utilized the AlphaSector Strategy (the "AlphaSector Funds").[14] Virtus Opportunities Trust ("VOT"), a Delaware statutory trust controlled by Virtus, issued mutual fund shares in the AlphaSector Funds to investors, including the Youngers Plaintiffs.[15]

4. The Youngers Plaintiffs further allege that VOT's registration statements from September 30, 2009 to June 11, 2013 stated that the AlphaSector Strategy had been used to manage actual investments since 2001, and that from 2001 to 2008 those investments generated a 380% greater return than the S & P 500 Index did over the same period.[16] VOT's 2014 registration statement did not include these historical returns.[17]

5. The Youngers Plaintiffs further allege that the statements regarding the AlphaSector Strategy's historical returns were false or misleading. Further, they allege that when VOT and certain of its officers and directors included the historical returns in VOT's registration statements, they violated the Securities Act of

---

7. Claim Nos. 109, 110, 111

8. Youngers Proofs of Claim [Claim Nos. 109, 110, 111], the *Second Amended Class Action Complaint for Violations of the Federal Securities Laws* ("Second Am. Compl.") [Dkt. No. 464–1] (which amends the complaint attached to the Youngers Proofs of Claim), the Virtus Opportunity Trust's publicly filed Form N–1A SEC Registration Statements, and two SEC cease-and-desist orders: *In re F–Squared Investments, Inc.,* Admin. & Cease–and–Desist Proc. File No. 3–16325, 2014 WL 7243183 (Dec. 22, 2014) ("*SEC Order F–Squared*") and *In re Virtus Investment Advisers, Inc.,* Admin. & Cease–and–Desist Proc. File No. 3–16959, 2015 WL 7179719 (Nov. 16, 2015) ("*SEC Order Virtus*")

9. Claim Obj. Hr'g, Jan. 26, 2016 ("Obj.Hr'g") [Dkt. No. 517]

10. Lift Stay Hr'g, Feb. 18, 2016 ("Stay Hr'g") [Dkt. No. 546]

11. SEC Order F–Squared ¶¶ 1–2, 7

12. *Id.* ¶¶ 1, 2

13. *Youngers v. Virtus Investment Partners, Inc.,* No 15–8262–WHP (S.D.N.Y. Jan. 4, 2016)

14. SEC Order Virtus ¶¶ 2, 15; Second Am. Compl. ¶ 56

15. Second Am. Compl. ¶¶ 23, 65

16. SEC Order Virtus 3, 14; SEC Order F–Squared 9–10; Second Am. Compl. ¶¶ 51

17. Virtus Opportunity Registration Statement (Jan. 1, 2014); Second Am. Compl. ¶ 92

1933 (the "Securities Act") and the Securities and Exchange Act of 1934 (the "Exchange Act") and certain fiduciary duties.

6. The Youngers Plaintiffs also assert several causes of action against the Debtors. They argue that each of the causes of action entitles the Class Members to a claim against the Debtors for the full amount of the damages the Class Members suffered as a result of VOT disseminating false historical returns. Initially, the Youngers Plaintiffs allege that, under § 15 of the Securities Act and § 20 of the Exchange Act, the Debtors are liable as control persons because they directed the VOT board of directors to include the false historical returns in the VOT registration statements. The Youngers Plaintiffs also allege that the Debtors owed a fiduciary duty to the Class Members, and that they breached that fiduciary duty. Finally, they allege that the Debtors aided and abetted the breaches of fiduciary duty committed by VOT and other defendants.

### The Bankruptcy Cases

7. On July 8, 2015 (the "Petition Date"), the Debtors each filed a chapter 11 bankruptcy petition, which stayed the Youngers Action solely as to the Debtors.

8. As of the Petition Date, the District Court had appointed the Youngers Plaintiffs as lead plaintiffs on behalf of the Class Members, but the class had not been certified. Discovery had not begun, but was stayed under the Private Securities Litigation Reform Act, which imposes an automatic stay on discovery while a motion to dismiss is pending.[18]

9. On September 14, 2015, the three Youngers Plaintiffs, on behalf of all the Class Members, each filed a separate class proof of claim (the "Youngers Proofs of Claim") based on the allegations made in the Youngers Action. The Debtors responded with the Objection.

10. On January 7, 2016, the Youngers Plaintiffs filed the Lift Stay Motion in order to continue the Youngers Action against the Debtors in the District Court; the Debtors oppose this request.

11. The Court heard argument on the Claim Objection and the Lift Stay Motion on January 26, 2016 and February 18, 2016, respectively. Both matters were taken under advisement.

### The Claim Objection; The Trust Did Not Carry Its Burden of Production

12. At both hearings, there was discussion of the appropriate standard by which the Court should consider the Objection to the Proofs of Claim. At the January 26 hearing, the Trust argued that the Youngers Proofs of Claim had to satisfy either the motion to dismiss or motion for summary judgment standard.[19] At the February 18 hearing, however, the Trust changed its position, arguing that the Youngers Proofs of Claim must meet the standard expressed in *In re Allegheny Intern., Inc.*, 954 F.2d 167 (3d Cir.1992).[20] Given the Trust's position, and as this is an objection to proofs of claim, the Court will consider the Objection under the *Allegheny* standards.[21]

13. In reviewing a claim to which an objection has been filed, it is helpful to

**18.** 15 U.S.C. § 78u–4(b)(3)(B)

**19.** Obj. Hr'g Tr. 39

**20.** Stay Hr'g Tr. 21–24

**21.** The Court recognizes that some courts have chosen to apply the federal pleading standards to proofs of claim. *See In re Nortel Networks, Inc.*, 469 B.R. 478, 497 (Bankr.

D.Del.2012) (discussing the split among different courts). But, as noted in *Nortel*, in the Third Circuit, the *Allegheny* standard is the rule absent consent or "highly unusual, even unique" circumstances not present here (*e.g.*, where upon the debtors' motion, the *Nortel* court ordered the claimant to file an a more definite statement of its claim). Here, the Court did not mandate the form of claim.

recite the *Allegheny* standards as originally enunciated by the Third Circuit.[22] *Allegheny* speaks to both the shifting burden of production as between claimant and objector as well as the ultimate burden of persuasion:

> ▮ The burden of proof for claims brought in bankruptcy court under 11 U.S.C.A. § 502(a) rests on different parties at different times. Initially, the claimant must allege facts sufficient to support the claim. If the averments in his filed claim meet this standard of sufficiency, it is *"prima facie"* valid. In other words, a claim that alleges facts sufficient to support a legal. liability to the claimant satisfies the initial obligation to go forward. The burden of going forward then shifts to objector to produce evidence sufficient to negate the *prima facie* validity of the filed claim. It is often said that the objector must produce evidence equal in force to the *prima facie* case. In practice, the objector must produce evidence, which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency. If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence. The burden of persuasion is always on the claimant.[23]

▮ 14. Bankruptcy Rule 3001 assists a claimant in satisfying its obligation to go forward, (*i.e.*, its initial burden of production). Pursuant to Bankruptcy Rule 3001(f), if a proof of claim is filed "in accordance" with Bankruptcy Rule 3001, the allegations in the proof of claim are treated as "prima facie *evidence* of the validity and amount of the claims."[24] Because a properly filed proof of claim is treated not merely as a document containing arguments and assertions, but as evidence that sufficiently supports its claims,[25] a proof of claim that is filed "in accordance" with Bankruptcy Rule 3001 serves to satisfy the claimant's initial burden of production.[26]

▮ 15. In order for a proof of claim to be filed "in accordance" with Bankruptcy Rule 3001, it must be in writing and conform substantially to the Official Form.[27] Consistent with the treatment of the claim as evidence, the Official Form requires the claimant to sign the form under penalty of perjury.[28] Multiple courts and commentators also require that a proof of claim "allege facts sufficient to support the claim"[29] In determining

---

22. A proof of claim to which no objection has been filed is "deemed allowed," 11 U.S.C. § 502(a), thus, the burdens of production and persuasion play no role in the allowance of that claim.

23. *In re Allegheny Intern., Inc.*, 954 F.2d 167, 173–74 (3d Cir.1992) (internal citations omitted)

24. *Id.* at 173; Fed. R. Bankr.P. 3001(f) (emphasis supplied)

25. *In re Muller*, 479 B.R. 508, 512 (Bankr. W.D.Ark.2012) (citing *In re Cluff*, 313 B.R. 323, 330 (Bankr.D.Utah 2004))

26. *In re Holm*, 931 F.2d 620, 623 (9th Cir. 1991) (cited approvingly in *Allegheny*, 954

F.2d at 173); *see also In re Planet Hollywood Intern.*, 274 B.R. 391, 394 (Bankr.D.Del. 2001); *In re Sacko*, 394 B.R. 90, 98 (Bankr. E.D.Penn.2008)

27. Fed. R. Bankr.P. 3001(a)

28. The form also states in bold, next to the signature line, "A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571."

29. *Allegheny*, 954 F.2d at 173; 4 COLLIER ON BANKRUPTCY ¶ 502.02[1][c] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.); *see also Hilton v. Hongisto (In re Hongisto)*, 293 B.R. 45, 50 (N.D.Cal.2003) ("a claim is not prima

whether a proof of claim contains sufficient allegations, a reviewing court will assume the allegations are true and ask whether the facts establish the necessary elements of a claim.[30] At first blush, this standard sounds like the same pleading standard that courts apply when reviewing a Rule 12(b) motion to dismiss. Several courts suggest, however, that the proof of claim pleading standard is a "relatively low threshold" that is less burdensome than the federal civil pleading standard.[31] As one court stated, "[a]s long as [a proof of claim provides] fair notice ... and the court can glean an actionable claim from the complaint, the court must entertain the party's case."[32]

■ 16. With the claimant's initial burden met, the burden to go forward shifts to the objector "to negate the *prima facie* validity of the filed claim."[33] An objector can meet this burden of production by "produc[ing] evidence equal in force to the *prima facie* case ... which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency."[34] The objector must produce actual evidence; "[m]ere allegations, unsupported by evidence, are insufficient to rebut the movant's *prima facie* case."[35] If an objector fails to meet its burden of production, its objection should be dismissed.[36] If an objector meets its burden of production, then the claimant must satisfy its ultimate burden of persuasion.

■ 17. As applied here, the Youngers Plaintiffs filed proofs of claim using the Official Form. They were signed under penalty of perjury. The forms attach a complaint, which, as subsequently amended, references two SEC cease-and-desist orders and VOT registration statements, and contains factual allegations.

facie valid ... unless the claimant has alleged facts sufficient to support a legal liability" (internal quotations omitted))

**30.** *In re Holm*, 931 F.2d 620, 623 (9th Cir. 1991) (cited approvingly in *Allegheny*, 954 F.2d at 173); *see also Planet Hollywood*, 274 B.R. at 394; *Sacko*, 394 B.R. at 98

**31.** *In re Smurfit–Stone Container Corp.*, 444 B.R. 111, 117 (Bankr.D.Del.2011); *see In re Nortel Networks, Inc.*, 469 B.R. 478, 497 (Bankr.D.Del.2012) (noting that the Third Circuit has chosen not to "impose[ ] federal pleading standards on those seeking to file proofs of claim"); *In re Chateaugay Corp.*, 94 F.3d 772, 777 (2d Cir.1996) ("[t]he primary purpose of claim filing provision is to ensure that all those involved in proceeding will be made aware of claims against debtor's estate and will have opportunity to contest those claims" (internal citation omitted)); *In re marchFirst, Inc.*, 431 B.R. 436, 443 (Bankr. N.D.Ill.2010); *Matter of Rimsat, Ltd.*, 223 B.R. 345, 348 (Bankr.N.D.Ind.1998) ("a proof of claim is not subject to the same rules of pleading that govern the pleadings filed in an adversary proceeding or other civil litigation"); *Matter of Int'l Match Corp.*, 69 F.2d 73, 76 (2nd Cir.1934) (a proof of claim should at least allege facts from which liability on the part of the bankrupt can be seen to exist); *but see In re DJK Residential LLC*, 416 B.R. 100, 106 (Bankr.S.D.N.Y.2009)

**32.** *In re O'Malley*, 252 B.R. 451, 456 (Bankr. N.D.Ill.1999)

**33.** *Allegheny*, 954 F.2d at 173

**34.** *Id.* at 173–74 (internal citations omitted)

**35.** *In re Transamerican Natural Gas Corp.*, 978 F.2d 1409, 1416 (5th Cir.1992)

**36.** *See Sacko*, 394 B.R. at 103 ("The Debtor offered no evidence to refute the [*prima facie* claim] and therefore, has not met his burden of production. The Objection ... will be overruled."); *Muller*, 479 B.R. at 517 (the court overruled the debtor's claim objection "[b]ecause the debtor did not present any evidence"); *In re Stoecker*, 143 B.R. 879, 884 (N.D.Ill.1992) (a claim objection that does not challenge the factual allegations in a proof of claim does not constitute a challenge to the allowability of a claim under section 502)

18. In particular, the Youngers Plaintiffs allege that the Debtors are liable to the Class Members for the fall in the price that the AlphaSector Funds experienced as a result of VOT disclosing the false AlphaSector Strategy historical· results. One theory of liability advanced by the Youngers Plaintiffs is that the Class Members have a private cause of action against the Debtors under section 15 of the Securities Act ("Section 15").[37] Section 15 imposes joint and several liability on "[e]very person who, directly or indirectly, controls any person liable" under the Securities Act.[38] A person has sufficient control if it (i) has "the power to direct or cause the direction of the management and policies of [the person that made the illegal disclosure], whether through the ownership of voting securities, by contract, or otherwise" and (ii) has "actual control over the [disclosure] in question"[39] The Securities Act also contains a statute of repose.[40]

19. The Youngers Proofs of Claim and related documents contain facts sufficient·

to meet the "relatively low threshold" contained in the *Allegheny* standard. Specifically, the Youngers Plaintiffs allege that:

a. F–Squared partnered with Virtus to develop and sub-advise VOT's AlphaSector Funds.[41]

b. F–Squared and its co-founder Howard Present developed false AlphaSector Strategy historical results.[42] From 2011 through 2013, VOT filed a registration statement that included those false historical results.[43]

c. In late 2013, F–Squared removed the false statements from its own marketing materials and Howard Present informed Virtus that the SEC was investigating F–Squared Investments, Inc.[44] Shortly after that point, VOT's board of directors followed F–Squared's lead and removed the false historical statements from its 2014 registration statements.[45] That registration statement did not retract or correct the prior misrepresentations.[46]

---

**37.** The parties agree that, in the instant dispute, Second Circuit law provides the applicable standard for Section 15 control. Obj. Hr'g Tr. 28:25, 29:1–5.

**38.** 15 U.S.C. § 77o(a)

**39.** *Floyd v. Liechtung*, 2013 WL 1195114, at *6 (S.D.N.Y. Mar. 25, 2013); *In re Lehman Brothers Mortgage–Backed Sec. Litig.*, 650 F.3d 167, 186 (2d Cir.2011) (in the Second Circuit, "control" has the same definition in section 15(a) as it does in section 20 (a))

**40.** A party that purchased a security must bring an action under Section 15 within three years of the date that "security was bona fide offered to the public." 15 U.S.C. § 77m; *Jackson Nat. Life Inc. Co. v. Merrill Lynch & Co., Inc.*, 32 F.3d 697, 704 (2d Cir.1994). The date that a security was bona fide offered to the public, triggering the statute of repose, is the effective date of the initial registration statement that provided information regarding the security, *Finkel v. Stratton Corp.*, 962 F.2d 169, 173 (2d Cir.1992), or the effective

date of an amended registration statement for securities purchased after the amendment. 15 U.S.C. § 80a–24(e); *see Morse v. Peat, Marwick. Mitchell & Co.*, 445 F.Supp. 619, 623 (S.D.N.Y.1977) (discussing the general effect of 15 U.S.C. § 80a–24(e)). The Youngers Plaintiffs allege that the Class Members purchased shares in the AlphaSector Funds within the statute of repose period. Second Am. Compl. 68–77, 155–64, 174–83, 187, 199.

**41.** Second Am. Compl. ¶ 56

**42.** Second Am. Compl. ¶ 51; *SEC Order F–Squared* ¶¶ 9–10

**43.** Second Am. Compl. ¶¶ 68–77, 155–64, 174–83

**44.** Second Am. Compl. ¶ 64; *SEC Order F–Squared* ¶ 26

**45.** Second Am. Compl. ¶ 92

**46.** *Id.* ¶ 78

20. Additionally, in the December 2014 Securities and Exchange Commission cease-and-desist order entered against F–Squared Investments, Inc., the SEC found that F–Squared Investments, Inc.,

> [C]aused certain mutual funds sub-advised by F–Squared [Investments, Inc.] **to violate Section 34(b) of the Investment Company Act** which, among other things, makes it unlawful for any person to make any untrue or misleading statement of material fact in any registration statement, application, report, account, record, or other document filed with the Commission under the Investment Company Act.[47]

21. As part of that order, F–Squared Investments, Inc. admitted that Howard Present, F–Squared's CEO at all relevant times, "worked with" the mutual fund adviser of funds F–Squared sub-advised "to include the inflated historical performance of the AlphaSector indexes from April 2001 to September 2008." [48]

22. Based on the allegations in the Youngers Proofs of Claim, which include the findings and admissions in the two SEC cease-and-desist orders, the Court can glean an actionable claim against the Debtors.[49] Consistent with *Allegheny*, the Youngers Proofs of Claim are entitled to be treated as *prima facie* evidence that satisfies the claimants' initial burden.[50] As a result, the burden of production shifts to the Trust.

23. The Trust did not present evidence to refute the Youngers Plaintiffs' allegations. The Trust filed an objection to the Youngers Proofs of Claim and a reply in support of the same. The Trust's filings did not include affidavits or attach any relevant documents, such as the operative agreement(s) between F–Squared and Virtus or the VOT, or other documents showing the relationship between them. The Trust proffered no evidence at the Claim Objection Hearing. The Trust, therefore, failed to carry its burden of production.

### Absence of Class Certification at This Stage Does Not Bar the Youngers Proofs of Claim

24. In addition to arguing that the Youngers Proofs of Claim contained insufficient allegations to constitute a properly filed claim, the Trust also argues that the Youngers Proofs of Claim should be disallowed, or substantially modified, because the District Court has not yet certified a class and/or the Youngers Plaintiffs have not filed a motion in this Court under Bankruptcy Rule 7023.[51] Specifically, the

---

47. SEC Order F–Squared ¶ 40 (emphasis supplied)

48. *Id.* App. A ¶ 16. The court in *In re Smith Barney*, a case which the Debtors' cite in their Objection, suggested that an allegation that a person "signed, drafted, approved or confirmed" a misleading statement may also suffice to show "control person" liability. *In re Smith Barney Transfer Agent Litigation*, 884 F.Supp.2d 152, 166–67 (S.D.N.Y.2012).

49. The Youngers Plaintiffs argue that the Debtors are liable to the Class Members under four independent legal theories: Section 15 of the Securities Act, Section 20 of the Exchange Act, breach of state law fiduciary duty, and aiding and abetting VOT's breach of fiduciary duty. The Youngers Plaintiffs seek to recover the same damages under each legal theory. If the Youngers Plaintiffs' allegations are correct, the Class Members will be entitled to the same damages regardless of which of theory is successful. Because the Court finds that, under *Allegheny*, the Youngers Plaintiffs have carried their initial burden of production with regard to Section 15 liability, and the Debtors did not meet their burden of production (*see infra*), the Court need not discuss the remaining legal theories.

50. The Court makes no determination as to whether the Youngers Plaintiffs' allegations satisfy the federal pleadings standard embodied in Rule 8 or Rule 9 of the Federal Rules of Civil Procedure.

51. Obj. ¶¶ 38–50

Trust argues that, at this stage of the bankruptcy case, certifying the Youngers Proofs of Claim will be inefficient and unreasonably delay estate distributions.[52]

■ 25. The Trust does not, however, cite law that establishes a *per se* bar against certifying a class claim after the confirmation of a plan—in fact, the Trust agrees that certification is committed to the Court's sound discretion.[53] Additionally, and contrary to the Trust's position, several courts have certified a class proof of claim post-confirmation where, as here, the class proof of claim was filed before the applicable bar date.[54] Because there is no *per se* rule prohibiting class certification, the Trust's argument is unpersuasive at this stage in the claim review process.

### *Cause Exits to Lift the Automatic Stay* [55]

26. The Trust argues that lifting the automatic stay and allowing the Youngers Action to proceed will unreasonably delay distribution from the estate.[56] Together, the three Youngers Proofs of Claim assert claims in the amount of $1.5 billion, which is approximately 98 percent of all claims against the Debtors.[57] As a result of the relative size of these claims, the estate cannot distribute any funds until the Youngers Proofs of Claim are liquidated or expunged as the Debtors cannot establish an appropriate reserve for disputed claims.[58] The Trust argues that if the stay is lifted, the District Court will likely not provide a ruling on a motion to dismiss for over a year and a half.[59] The Trust concludes that such a delay would unfairly prejudice the estate and the claimants awaiting distribution.

27. The Youngers Plaintiffs respond by arguing that the balance of burdens greatly tilts in their favor.[60] Maintaining the stay will burden the Class Members because they will be required to litigate the Youngers Action in two separate venues. Further, they argue that because both actions are based on the same, allegedly improper disclosures, the non–Debtor defendants in the Youngers Action may assert that the Youngers Plaintiffs are violating the Private Securities Litigation Reform Act if the Youngers Plaintiffs seek discovery in a proceeding in this Court.[61] They also argue that lifting the stay will not prejudicially delay distribution from the estate because, regardless of whether this Court or the District Court decides the merits of the Youngers Proofs of Claim, the Debtors "must await the outcome of the *Youngers* Litigation" before making a distribution.[62] Finally, they assert that the District Court is likely to

52. *Id.* ¶¶ 39–50

53. *Id.* ¶ 41

54. *See In re Kaiser Group Intern., Inc.,* 278 B.R. 58 (Bankr.D.Del.2002); *In re Connaught Group, Ltd.,* 491 B.R. 88 (Bankr.S.D.N.Y. 2013); *In re MF Global Inc.,* 512 B.R. 757 (Bankr.S.D.N.Y.2014)

55. The Trust notes that the Youngers Plaintiffs did not seek relief from the Plan Injunction, which came into effect after the Youngers Plaintiffs filed the Lift Stay Motion. Lift Stay Response ¶¶ 8–11. However, the Trust does not argue that the standard for obtaining automatic stay relief is different than the standard for obtaining relief from the Plan Injunc-

tion. Lift Stay Response 12–14. As a result, the existence of the Plan Injunction does not alter the Court's analysis.

56. Lift Stay Response ¶ 18

57. *Id.* ¶ 18

58. Objection Reply ¶ 21

59. Lift Stay Hr'g Tr. 19

60. Lift Stay Motion ¶¶ 16–17

61. *Id.* ¶ 17

62. *Id.* ¶ 16

rule on any motion to dismiss in "a few" months, not a year and a half.[63]

■ 28. The Court finds that the most appropriate action is to lift the automatic stay solely to permit the Debtors to file a motion to dismiss in the Youngers Litigation, and for briefing to ensue so that the District Court can rule on the motion.

29. Section 362(d)(1) provides:

On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay ... for cause.[64]

■ "Cause" is not defined in the Bankruptcy Code; it is a flexible concept, determined on a case-by-case basis.[65] Whether "cause" exists to lift the automatic stay is "based on the totality of the circumstances in each particular case." [66]

■ 30. Courts in this district have found that cause may exist to lift the stay when a party seeks to continue prepetition litigation that is pending against a debtor in another forum.[67] When this request is made, a three part balancing test is applied. The Court considers:

(i) Whether any great prejudice to either the bankruptcy estate or the debtor will result from continuation of the civil suit;

(ii) Whether the hardship to the non-bankruptcy party by maintenance of the stay considerably outweighs the hardship to the debtor; and

(iii) Whether the creditor has a probability of prevailing on the merits.[68]

31. Contrary to the Debtors' arguments, the Youngers Action appears to be primed for a ruling on a motion to dismiss. As to every non-debtor defendant, briefing is completed on a motion to dismiss the Second Amended Complaint and oral argument is scheduled before the District Court on April 8, 2016.[69] But for the automatic stay, the Debtors, no doubt, would also have a motion teed up for this date. While the Debtors are not part of the hearing before the District Court, they can promptly file a motion to dismiss in the Youngers Action. Should the District Court grant the current motions of the non-debtor defendants or grant the Debtors' to-be-filed motion to dismiss, the claim would be resolved.[70]

32. The Trust has not shown any great prejudice to the estate. The Trust argues that lifting the stay would prejudice the estate and creditors by delaying distribution because the size of the claim does not permit a reserve. There are other contested claims, however, which must be resolved before distribution can occur, including the Gold Coast claim, which also creates a reserve issue and prevents immediate distribution.[71] It does not appear that lifting the stay to allow the District

**63.** Obj. Hr'g Tr. 75:12–21

**64.** 11 U.S.C. § 362(d)(1)

**65.** *In re Tribune,* 418 B.R. 116, 126 (Bankr. D.Del.2009)

**66.** *Id.*

**67.** *In re Rexene Products Co.,* 141 B.R. 574, 576 (Bankr.D.Del.1992)

**68.** *Id.*

**69.** Youngers Action Dkt. Nos. 61, 85–87

**70.** Lift Stay Hr'g Tr. 75–76

**71.** Obj. Hr'g Tr. 49

Court to rule on a motion to dismiss will prejudicially delay distribution.

33. Conversely, moving forward in this Court may create inefficiencies for the parties. If the Court does not lift the stay, the parties may begin discovery only to have the District Court grant the non-debtors' motions to dismiss, thus precluding the Youngers Proofs of Claim. This duplication of efforts is unwarranted.

34. The final prong, the Youngers Plaintiffs' probability of success on the merits, is a close call, but the required showing on a motion for relief from stay is "very slight." [72] As the Court has already found that the Youngers' Proofs of Claim meet the *Allegheny* "relatively low threshold" standard, the Court is satisfied that, in this instance, the requisite "slight showing" of possible success has been met.

**ACCORDINGLY, IT IS HEREBY**

**ORDERED** that the Objection is dismissed without prejudice, and it is further **ORDERED** that the automatic stay and Plan Injunction is lifted solely to permit the Debtors to file a motion to dismiss in the Youngers Action, to permit all briefing related thereto, and for the District Court to decide the motion to dismiss and issue any order on the same.

---

72. *In re Rexene Products Co.,* 141 B.R. 574, 578 (Bankr.D.Del.1992)

